9 Cal.Rptr.3d 422 (2004)
115 Cal.App.4th 638
David ABRAMSON, Plaintiff and Appellant,
v.
JUNIPER NETWORKS, INC., et al., Defendants and Respondents.
No. H025840.
Court of Appeal, Sixth District.
February 6, 2004.
Review Denied April 21, 2004.[**]
*426 Joseph C. Markowitz, Law Offices of Joseph C. Markowitz, Los Angeles, for Appellant.
Marina C. Tsatalis, Jennifer K. Mathe, Wilson, Sonsini, Goodrich & Rosati, Palo Alto, for Respondent.
Certified for Partial Publication.[*]
McADAMS, J.
Plaintiff David Abramson sued his former employer and four of its employees, asserting breach of contract, wrongful termination, and other claims. Plaintiff's employment agreement contained arbitration provisions, which he challenged as unenforceable. The trial court rejected plaintiff's challenges and ordered the parties to arbitration. Following an interim appeal, several motions, and two abortive attempts at arbitration, the trial court entered defense summary judgment on the ground *427 that plaintiff had failed to exhaust his arbitration remedies.
In this appeal, plaintiff continues to assert the invalidity of the arbitration agreement and the orders and judgment flowing from it. For their part, defendants ask us to dismiss the appeal, to limit its scope, or to affirm the judgment.
As we explain in an unpublished portion of the opinion, we decline to dismiss the appeal. We also decline to limit the scope of the appeal. On the merits, we conclude that the arbitration agreement is unenforceable in its entirety. We therefore reverse the judgment.

FACTS AND PROCEDURAL HISTORY
In March 1999, plaintiff began working for defendant Juniper Networks, Inc., as its director of corporate communications. Before starting with Juniper, plaintiff signed an offer letter and an employment agreement. Both contained arbitration provisions. Less than a year later, Juniper terminated plaintiff's employment.
In February 2000, shortly after his termination, plaintiff filed a complaint against Juniper and four of its employees.[1] According to the complaint, the defendants made misrepresentations and false promises, which induced plaintiff to leave his prior employer and join Juniper. Plaintiff also alleged that defendants violated public policy by discriminating against him on the basis of his age, by failing to reasonably accommodate his disabilities, by unfairly depriving him of stock options, and by wrongfully terminating his employment. Plaintiff's complaint asserted seven causes of action. The first six were for breach of contract, fraud, misrepresentation, termination of employment in violation of public policy, unfair competition, and defamation. Plaintiff's seventh cause of action sought a declaration that the agreement to arbitrate was unenforceable.
In April 2000, defendants moved to compel arbitration. They also sought a dismissal or stay of the action pending arbitration. In support of the motion, defendants presented copies of the offer letter and the employment agreement and submitted evidence that plaintiff had refused to stipulate to arbitration. Plaintiff opposed the motion, arguing that the arbitration agreement was unconscionable and declaring that there had been no negotiation concerning arbitration, that he was surprised by its one-sided terms, and that the arbitration costs had not been explained to him.
Following a hearing in May 2000, the court took the motion under submission. The next month, it issued a minute order stating: "The motion is granted." In July 2000 the court entered judgment, which both compelled arbitration and dismissed plaintiff's complaint without prejudice.
Plaintiff appealed the July 2000 judgment to this court. As to the first portion of the judgment compelling arbitration, we treated the appeal as a petition for a writ, which we summarily denied in April 2001. The following month, we disposed of the remainder of the judgment, concluding on the merits that the trial court erred in dismissing plaintiff's action rather than staying it. We therefore reversed the judgment of dismissal and directed the court to stay the action pending arbitration.
*428 In June 2001, shortly after we decided the first appeal, plaintiff filed a demand for arbitration with the American Arbitration Association (AAA). Despite the demand, no arbitration was commenced, because the parties disagreed on who should pay the filing fee and administrative expenses. Plaintiff took the position that Juniper should pay the arbitration fees, relying on a California Supreme Court case, Armendariz v. Foundation Health Psychcare Services, Inc. (2000) 24 Cal.4th 83, 99 Cal.Rptr.2d 745, 6 P.3d 669 (Armendariz). Defendants took the opposite view, relying on the contract provision requiring Juniper to advance only half of the fees. In July 2001, faced with this impasse, AAA "returned" the matter to plaintiff's counsel "until the pre-case issue with the filing fee" could be "resolved."
In August 2001, plaintiff moved the trial court for an order lifting the arbitration stay and permitting prosecution of the action in the judicial forum. In support of the motion, plaintiff offered evidence of the impasse in the arbitration and of the resulting return of his arbitration demand. Defendants confirmed plaintiff's refusal to share the arbitration costs and their refusal to bear them all. Both parties argued their respective positions, with plaintiff relying principally on Armendariz.
In October 2001, the trial court denied plaintiff's motion. The court opined that Armendariz"is not applicable unless a statutory FEHA claim is asserted as contrasted with a claim cognizable under FEHA." The court thus concluded that Armendariz did not control any of plaintiff's claims, even those it recognized as "cognizable under FEHA."
In November 2001, following the denial of his motion, plaintiff refiled his arbitration demand, this time advancing half of the fees initially demanded by AAA, which amounted to more than four thousand dollars. In March 2002, AAA conducted a "preliminary hearing" in the matter by conference call. In that initial conference, plaintiff's attorney proposed that the arbitrator first consider two threshold issues: responsibility for payment of arbitration fees and validity of the arbitration agreement. Defendants' attorney objected to the proposal, asserting that the court already had decided both issues.
The arbitrator ordered the parties to brief the two threshold issues concerning arbitrability. In April 2002, in accordance with the briefing schedule, plaintiff submitted his arbitration brief addressing those two issues.
Defendants did not respond in the arbitration forum, but instead returned to court. By motion filed with the trial court in April 2002, defendants requested relief from the arbitration stay on their own behalf; they also sought enforcement against plaintiff of the court's previous arbitration orders, as well as sanctions and contempt orders against his counsel. In support of their motion, defendants cited plaintiff's attempt to have AAA decide the two threshold questions relating to arbitrability. In opposition to the motion, plaintiff's attorney declared and explained his belief that those issues were properly before the arbitrator, particularly the issue of validity of the agreement to arbitrate. With respect to the arbitration fees, he further declared: "My client has already advanced $4,250 in fees billed by the AAA, and has just been billed an additional $6,450. It is unlikely that he will be able to pay these new fees."
In June 2002, the court granted the defendants' motion to the extent that it sought enforcement of prior judicial orders, though it denied their request for sanctions and contempt. The court ordered plaintiff to "arbitrate his substantive claims" according to the terms of the arbitration *429 agreement. Stating that it had "previously determined that those arbitration provisions, including the cost-sharing provision, are valid and enforceable," the court reiterated that determination. It also reiterated that the judge, "not the arbitrator, is to determine whether an agreement is arbitrable." The court then cautioned plaintiff that he would be subject to sanctions if he continued to argue the arbitrability issues in the arbitration forum.
Shortly thereafter, AAA terminated the arbitration proceedings based on plaintiff's failure to make further payments.
In September 2002, defendants moved the court in the alternative for summary judgment or summary adjudication. They argued that a defense judgment was proper because plaintiff had failed to exhaust his arbitration remedies. Plaintiff opposed the motion, citing his inability to pay the costs demanded by AAA. Among other things, he declared that his "only current income is $330 per week in unemployment benefits." He further declared that he had traded in his car for a used pickup truck and that he was then in the process of selling his house  his "only other significant asset"  and that the proceeds of these transactions were needed for "living expenses and debts." Plaintiff's declaration further recited that he had debts in excess of $140,000. It also stated that AAA had closed his arbitration because he was "unable to afford the administrative fees" it demanded.
In October 2002, the court granted the defense motion for summary judgment. The court stated: "Summary judgment for the defendant is appropriate where the plaintiff fails to exhaust the arbitration remedies before resorting to the courts [citations]." Because defendants had made "a prima facie showing" of plaintiff's failure to exhaust those remedies, the court said, "the burden shifted to plaintiff to establish a defense, namely, prohibitive costs. Plaintiff failed to satisfy this burden due to the inadequacy of his declaration." The court specifically commented on plaintiff's failure to offer "evidence of his assets." It concluded: "By failing to provide the Court with any accounting of his assets, he has failed to establish an inability to pay the costs."
In March 2003, defendants gave notice of entry of judgment.
This timely appeal by plaintiff ensued.

CONTENTIONS
Plaintiff urges three grounds of error on appeal. First, he claims that the trial court erred in compelling arbitration because the arbitration agreement is unconscionable. Next, plaintiff argues, it was error to uphold the cost-sharing provisions in the arbitration agreement, given recent binding case law. Finally, he challenges the court's grant of summary judgment, which was based on his ability to pay arbitration costs.
Defendants' response is multipronged. At the threshold, defendants request dismissal of plaintiff's appeal, citing his violations of court rules; they also seek to limit the scope of appellate issues to those arising out of the summary judgment. Defendants next defend the court's grant of summary judgment, arguing that plaintiff failed to exhaust his arbitration remedies. Finally, they also defend the trial court's determination that the arbitration agreement is valid. As to this point, defendants assert that plaintiff failed to establish unconscionability.

THRESHOLD ISSUES
In an unpublished portion of this opinion, we address Juniper's request for dismissal of the appeal. Next, in sections *430 certified for publication, we set forth the proper scope and standard of review.

I. Dismissal[**]

II. Scope Of Review
Defendants urge us to limit our review to the propriety of the trial court's grant of summary judgment. They contend that neither the order compelling arbitration nor the validity of the underlying arbitration agreement is properly before us.
We reject defendants' contentions. As we explain, both the order and the agreement are proper subjects for our review.

A. Order Compelling Arbitration
With respect to an order compelling arbitration, the question is not whether an aggrieved party is entitled to appellate review, but when. As we recognized in our prior appellate opinion in this case, no immediate, direct appeal lies from an order compelling arbitration. (See Code Civ. Proc., § 1294; Gordon v. G.R.O.U.P., Inc. (1996) 49 Cal.App.4th 998, 1004, fn. 8, 56 Cal.Rptr.2d 914.) But such an order is subject to review on appeal from the final judgment. (Code Civ. Proc., § 1294.2; cf., Muao v. Grosvenor Properties, Ltd. (2002) 99 Cal.App.4th 1085, 1088-1089, 122 Cal.Rptr.2d 131 [validity of the order reviewed on appeal from judgment confirming arbitration award]; State Farm Fire & Casualty v. Hardin (1989) 211 Cal.App.3d 501, 506, 259 Cal.Rptr. 433 [same]; Wetsel v. Garibaldi (1958) 159 Cal.App.2d 4, 8, 323 P.2d 524 [same].)
Both as a general rule and with specific reference to arbitration, appellate review following a final judgment properly encompasses "any intermediate ruling, proceeding, order or decision" of the trial court that "involves the merits" or "necessarily affects" the judgment or "substantially affects the rights of a party...." (Code Civ. Proc., §§ 906, 1294.2; see generally Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2002) ¶ 2:261, p. 2-118.) In this case, the intermediate order compelling arbitration meets all three statutory criteria: it involves the merits of the controversy, it necessarily affects the judgment, and it substantially affects plaintiff's rights. That being so, the order is within the proper scope of review on this appeal.

B. Arbitration Agreement
The validity of the order compelling arbitration necessarily turns on the enforceability of the underlying agreement to arbitrate. (See Code Civ. Proc., § 1281.2 subd. (b) [no order for arbitration if there are grounds for "revocation of the agreement"]; Graham v. Scissor-Tail, Inc. (1981) 28 Cal.3d 807, 816-817, 831, 171 Cal.Rptr. 604, 623 P.2d 165 [order compelling arbitration was erroneous because underlying agreement was unenforceable]; Villa Milano Homeowners Assn. v. Il Davorge (2000) 84 Cal.App.4th 819, 824-825, 102 Cal.Rptr.2d 1 ["threshold question" in deciding petition to compel arbitration is whether there is a valid agreement to arbitrate]; Brookwood v. Bank of America (1996) 45 Cal.App.4th 1667, 1670, 53 Cal.Rptr.2d 515 [the validity of an arbitration agreement is determined upon petition to compel arbitration]; Wetsel v. Garibaldi, supra, 159 Cal.App.2d at p. 8, 323 P.2d 524 [question of "continuing validity" of agreement to arbitrate submitted to court on petition to compel arbitration].) For that reason, the validity of the arbitration agreement itself is within the proper scope of review on this appeal.
*431 In short, on this appeal, we will review both the order compelling arbitration and the underlying arbitration agreement, as well as the defense summary judgment.

III. Standard of Review
We independently review all of the issues presented by this appeal.

A. Summary Judgment
Since the grant of summary judgment presents pure questions of law, it is subject to de novo review on appeal. (Buss v. Superior Court (1997) 16 Cal.4th 35, 60, 65 Cal.Rptr.2d 366, 939 P.2d 766; Barton v. Elexsys Internat., Inc. (1998) 62 Cal.App.4th 1182, 1187, 73 Cal.Rptr.2d 212.)

B. Arbitration Agreement and Order
Here, the parties presented no disputed extrinsic evidence concerning the agreement to arbitrate. For that reason, its validity is subject to independent appellate review. (See, e.g., McManus v. CIBC World Markets Corp. (2003) 109 Cal.App.4th 76, 86, 134 Cal.Rptr.2d 446; O'Hare v. Municipal Resource Consultants (2003) 107 Cal.App.4th 267, 273, 132 Cal.Rptr.2d 116; cf. Green v. Mt. Diablo Hospital Dist. (1989) 207 Cal.App.3d 63, 69, 254 Cal.Rptr. 689.) For the same reason, we also review the order compelling arbitration de novo. (NORCAL Mutual Ins. Co. v. Newton (2000) 84 Cal.App.4th 64, 71-72, 100 Cal.Rptr.2d 683; Herman Feil, Inc. v. Design Center of Los Angeles (1988) 204 Cal.App.3d 1406, 1414, 251 Cal.Rptr. 895.)

DISCUSSION
We begin our analysis with a discussion of the summary judgment. In an unpublished portion of this decision, we conclude that the summary judgment for defendants must be reversed.

I. Summary Judgment[***]

II. Arbitration
For the guidance of the trial court on remand, we examine the question of arbitrability of plaintiff's claims. As a framework for that discussion, we briefly review the principles and policies that govern contractual arbitrations generally. Against that backdrop, we discuss the standards of enforceability that apply to plaintiff's specific claims. To the extent that the arbitration agreement in this case fails to satisfy the applicable standards, we also consider whether the objectionable portions are severable.

A. General Principles
Contractual arbitration refers to the process by which parties voluntarily agree to submit their disputes for resolution in a nonjudicial forum. (See generally Knight et al., Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group 2002) ¶ 5:6, p. 5-3.) "Both state and federal law provide for enforcement of such agreements." (Ibid.)

1. The Statute
California's statutory provisions concerning contractual arbitration are contained in the Code of Civil Procedure, beginning at section 1280. As relevant here, the statute provides: "A written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." (Code Civ. Proc., § 1281.) In that respect, California follows federal law, as embodied in *432 the Federal Arbitration Act. (9 U.S.C. § 1 et seq.; see id., § 2 [arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract"].)

2. Policy
"There is a strong public policy in favor of arbitration agreements." (Blake v. Ecker (2001) 93 Cal.App.4th 728, 741, 113 Cal.Rptr.2d 422.) "California law incorporates many of the basic policy objectives contained in the Federal Arbitration Act, including a presumption in favor of arbitrability [citation] and a requirement that an arbitration agreement must be enforced on the basis of state law standards that apply to contracts in general [citation]." (Engalla v. Permanente Medical Group, Inc. (1997) 15 Cal.4th 951, 971-972, 64 Cal.Rptr.2d 843, 938 P.2d 903; accord, Armendariz, supra, 24 Cal.4th at p. 97, 99 Cal.Rptr.2d 745, 6 P.3d 669.) Given the policy favoring arbitration, "doubts concerning the scope of arbitrable issues are to be resolved in favor of arbitration. [Citations.]" (Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak Street (1983) 35 Cal.3d 312, 323, 197 Cal.Rptr. 581, 673 P.2d 251; see also, e.g., Moncharsh v. Heily & Blase (1992) 3 Cal.4th 1, 9, 10 Cal.Rptr.2d 183, 832 P.2d 899; Charles J. Rounds Co. v. Joint Council of Teamsters No. 42, supra, 4 Cal.3d at p. 892, 95 Cal.Rptr. 53, 484 P.2d 1397.)
Despite the strong policy favoring arbitration, there are circumstances in which California courts may invalidate or limit agreements to arbitrate. Employing "general contract law principles," courts will refuse to enforce arbitration provisions that are "unconscionable or contrary to public policy." (Armendariz, supra, 24 Cal.4th at p. 99, 99 Cal.Rptr.2d 745, 6 P.3d 669.)

B. Analytic Framework: Introduction

1. Identifying the Nature of the Claims
In deciding whether an agreement to arbitrate is enforceable, the first step in the analysis is to determine whether the agreement implicates public or private rights. Identifying the nature of the claims at issue is critical, because different enforceability standards apply to different types of claims.

2. Applying the Relevant Standards
After assessing the nature of the plaintiff's claims, the next step is to apply the appropriate test.
Where the plaintiff's claims arise from unwaivable public rights, whether statutory or nonstatutory, the arbitration agreement must satisfy the minimum requirements set forth in Armendariz. (See, e.g., Little v. Auto Stiegler, Inc. (2003) 29 Cal.4th 1064, 1076-1081, 130 Cal.Rptr.2d 892, 63 P.3d 979 (Little).) Assuming it satisfies the Armendariz requirements, an agreement to arbitrate public claims also must be conscionable.
Where the plaintiff asserts private rights rather than (or in addition to) unwaivable public rights, the agreement to arbitrate those claims is tested only against conscionability standards. (See, e.g., Armendariz, supra, 24 Cal.4th at pp. 113-114, 99 Cal.Rptr.2d 745, 6 P.3d 669.)

3. Assessing Severability
If the court determines that the arbitration agreement contains provisions that are unenforceable  either because they violate public policy or because they are unconscionable  it then undertakes the third and final step in the analysis: assessing severability. A court need not void an arbitration agreement in its entirety *433 if the objectionable terms can be severed or restricted. (See, e.g., Armendariz, supra, 24 Cal.4th at pp. 123-124, 99 Cal.Rptr.2d 745, 6 P.3d 669; Little, supra, 29 Cal.4th at pp. 1074-1075, 130 Cal.Rptr.2d 892, 63 P.3d 979.) The "overarching" question in such cases is whether severance serves the interests of justice. (Armendariz, supra, 24 Cal.4th at p. 124, 99 Cal.Rptr.2d 745, 6 P.3d 669.)
We describe each aspect of the analysis more fully below.

C. Vindication of Public Rights: Armendariz Analysis
As noted above, courts will not compel employees to arbitrate their unwaivable public policy claims unless the arbitration agreement satisfies certain minimum requirements for essential fairness. (Armendariz, supra, 24 Cal.4th at pp. 91, 102-103, 99 Cal.Rptr.2d 745, 6 P.3d 669; Little, supra, 29 Cal.4th at p. 1076, 130 Cal.Rptr.2d 892, 63 P.3d 979; see generally Knight et al., Cal. Practice Guide: Alternative Dispute Resolution, supra, ¶ 5:155.9, p. 5-78.) Two categories of claims fall within this rule, statutory and nonstatutory.

1. Nature of the Claim

a. Statutory Rights
In 2000, the California Supreme Court issued its landmark decision in Armendariz. As our high court explained there, "arbitration agreements that encompass unwaivable statutory rights must be subject to particular scrutiny." (Armendariz, supra, 24 Cal.4th at p. 100, 99 Cal.Rptr.2d 745, 6 P.3d 669, italics omitted.) The plaintiffs' claims in that case arose from California's Fair Employment and Housing Act (FEHA). (Id. at p. 91, 99 Cal.Rptr.2d 745, 6 P.3d 669, citing Gov.Code, § 12900 et seq.) As the court stated, "it is evident that an arbitration agreement cannot be made to serve as a vehicle for the waiver of statutory rights created by the FEHA." (Id. at p. 101, 99 Cal.Rptr.2d 745, 6 P.3d 669.) The court thus endorsed "the basic principle of nonwaivability of statutory civil rights in the workplace...." (Id. at p. 102, 99 Cal.Rptr.2d 745, 6 P.3d 669.)

b. Nonstatutory Rights
Less than three years later, while this case was pending in the trial court, the California Supreme Court decided Little. In Little, the court reiterated its recognition that "some arbitration agreements and proceedings may harbor terms, conditions and practices that undermine the vindication of unwaivable rights." (Little, supra, 29 Cal.4th at p. 1079, 130 Cal.Rptr.2d 892, 63 P.3d 979.) Furthermore, the court explained, "there is no reason under Armendariz's logic to distinguish between unwaivable statutory rights and unwaivable rights derived from common law." (Ibid.) The court therefore extended Armendariz to nonstatutory actions alleging wrongful employment termination in violation of public policy, known as Tameny claims. (Id. at pp. 1076-1077, 130 Cal.Rptr.2d 892, 63 P.3d 979, discussing Tameny v. Atlantic Richfield Co. (1980) 27 Cal.3d 167, 178, 164 Cal.Rptr. 839, 610 P.2d 1330.) As the court put it, "the Armendariz requirements are as appropriate to the arbitration of Tameny claims as to unwaivable statutory claims." (Id. at p. 1077, 130 Cal.Rptr.2d 892, 63 P.3d 979.)
Where, as here, the plaintiff alleges a Tameny claim for wrongful termination in violation of public policy, that claim is arbitrable, but only if the arbitration agreement first meets the minimum requirements set forth in Armendariz.

2. Minimum Requirements
To be lawful under Armendariz, an agreement to arbitrate public policy *434 employment claims must satisfy five requirements. (1) The agreement must provide for adequate discovery. (2) It must require a written decision allowing limited judicial review. (3) The agreement must permit the types of relief that would be available in court. (4) It must limit the employee's forum costs. (See Armendariz, supra, 24 Cal.4th at pp. 91, 102-103, 99 Cal.Rptr.2d 745, 6 P.3d 669; Little, supra, 29 Cal.4th at p. 1081, 130 Cal.Rptr.2d 892, 63 P.3d 979.)(5) Finally, as with all contractual arbitration, an agreement to arbitrate a public policy claim must provide for a neutral arbitrator. (See Armendariz, supra, 24 Cal.4th at pp. 91, 103, 99 Cal.Rptr.2d 745, 6 P.3d 669.) Unless that final, universal requirement is met, "the agreement to arbitrate is essentially illusory." (Graham v. Scissor-Tail, Inc., supra, 28 Cal.3d at p. 825, 171 Cal.Rptr. 604, 623 P.2d 165, italics omitted.)
Of those requirements, only the limitation on costs is relevant here. On that point, Armendariz confirms the principle "that statutory or constitutional rights may be transgressed as much by the imposition of undue costs as by outright denial." (Armendariz, supra, 24 Cal.4th at p. 109, 99 Cal.Rptr.2d 745, 6 P.3d 669.) It holds that "the imposition of substantial forum fees" on employees seeking to vindicate their statutory rights "is contrary to public policy, and is therefore grounds for invalidating or revoking an arbitration agreement and denying a petition to compel arbitration...." (Id. at p. 110, 99 Cal.Rptr.2d 745, 6 P.3d 669.) Little extends that rule to nonstatutory claims, noting that "the principle that arbitration costs may prevent arbitration claimants from effectively pursuing their public rights would apply with equal force to Tameny claims as to FEHA claims or to federal statutory claims." (Little, supra, 29 Cal.4th at p. 1080, 130 Cal.Rptr.2d 892, 63 P.3d 979.)
As a practical result, employers may not require employees to pay forum costs that are unique to arbitration. Thus, "when an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any type of expense that the employee would not be required to bear if he or she were free to bring the action in court." (Armendariz, supra, 24 Cal.4th at pp. 110-111, 99 Cal.Rptr.2d 745, 6 P.3d 669; accord, Little, supra, 29 Cal.4th at p. 1085, 130 Cal.Rptr.2d 892, 63 P.3d 979.) In the face of a silent agreement, Armendariz"categorically imposes costs unique to arbitration on employers when unwaivable rights pursuant to a mandatory employment arbitration agreement are at stake." (Little, supra, 29 Cal.4th at p. 1084, 130 Cal.Rptr.2d 892, 63 P.3d 979.) Our high court thus expressly rejected "a case-by-case approach" that would involve "individualized consideration of employees' ability to pay arbitration costs" in cases affecting unwaivable public rights. (Id. at pp. 1084, 1085, 130 Cal.Rptr.2d 892, 63 P.3d 979; see Armendariz, supra, 24 Cal.4th at p. 111, 99 Cal.Rptr.2d 745, 6 P.3d 669.)

3. Effect of Armendariz Standards
To be enforceable, an agreement that affects public rights must satisfy the factors set forth in Armendariz. (Little, supra, 29 Cal.4th at p. 1080, 130 Cal.Rptr.2d 892, 63 P.3d 979.) A judicial determination that an arbitration provision "would force a party to forgo unwaivable public rights" is a "ground for refusing to enforce" it. (Id. at p. 1079, 130 Cal.Rptr.2d 892, 63 P.3d 979.)
In addition to satisfying the Armendariz requirements, an agreement to arbitrate *435 public rights necessarily must be conscionable as well. That conclusion inevitably follows from the great deference accorded unwaivable public rights by both the Legislature and the California Supreme Court. (See, e.g., Armendariz, supra, 24 Cal.4th at pp. 101-102, 99 Cal.Rptr.2d 745, 6 P.3d 669; Little, supra, 29 Cal.4th at p. 1079, 130 Cal.Rptr.2d 892, 63 P.3d 979.) If agreements to arbitrate claims arising from ordinary private rights must meet conscionability standards, then certainly those that affect revered public values warrant the same consideration.
We discuss the applicable standards of conscionability more fully below. Though analyzed here in connection with the vindication of private rights, those standards apply with equal force to agreements that affect the vindication of public rights.

D. Vindication of Private Rights: Unconscionability Analysis
Arbitration agreements that cover disputes over private, waivable rights are valid if they satisfy established standards of conscionability. (See, e.g., Armendariz, supra, 24 Cal.4th at pp. 113-114, 99 Cal.Rptr.2d 745, 6 P.3d 669.) Conversely, courts will refuse to enforce unconscionable arbitration provisions. (See, e.g., Armendariz, supra, 24 Cal.4th at p. 124, 99 Cal.Rptr.2d 745, 6 P.3d 669; O'Hare v. Municipal Resource Consultants, supra, 107 Cal.App.4th at pp. 272-273, 132 Cal.Rptr.2d 116; Mercuro v. Superior Court (2002) 96 Cal.App.4th 167, 174, 116 Cal.Rptr.2d 671.)

1. Background
Unconscionability is a judicially created doctrine, which the Legislature codified in 1979. (Civ.Code, § 1670.5, subd. (a); see Armendariz, supra, 24 Cal.4th at pp. 113-114, 99 Cal.Rptr.2d 745, 6 P.3d 669; Kinney v. United HealthCare Services, Inc. (1999) 70 Cal.App.4th 1322, 1328, 83 Cal.Rptr.2d 348; Stirlen v. Supercuts, Inc. (1997) 51 Cal.App.4th 1519, 1530-1531, 60 Cal.Rptr.2d 138.) Whether an agreement is unconscionable depends on circumstances at the time it was made. (Civ.Code, § 1670.5, subd. (a).) "Unconscionability analysis begins with an inquiry into whether the contract is one of adhesion. [Citation.]" (Armendariz, supra, 24 Cal.4th at p. 113, 99 Cal.Rptr.2d 745, 6 P.3d 669.) If the agreement is adhesive, the court then considers whether other factors render it unenforceable under established legal principles. (Ibid.)
Unconscionability has procedural and substantive aspects. (Armendariz, supra, 24 Cal.4th at p. 114, 99 Cal.Rptr.2d 745, 6 P.3d 669.) "Both procedural and substantive unconscionability must be present before a court can refuse to enforce an arbitration provision based on unconscionability. However, the two elements need not be present in the same degree." (O'Hare v. Municipal Resource Consultants, supra, 107 Cal.App.4th at p. 273, 132 Cal.Rptr.2d 116.) Courts use a "`sliding scale'" approach in assessing the two elements. (Armendariz, supra, 24 Cal.4th at p. 114, 99 Cal.Rptr.2d 745, 6 P.3d 669.) "In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (Ibid.)

2. Elements

a. Procedural Unconscionability
"`Procedural unconscionability' concerns the manner in which the contract was negotiated and the circumstances of the parties at that time. [Citation.]" (Kinney v. United HealthCare Services, Inc., supra, 70 Cal.App.4th at p. 1329, 83 *436 Cal.Rptr.2d 348.) The relevant factors are oppression and surprise. (Ibid; see also Armendariz, supra, 24 Cal.4th at pp. 114-115, 99 Cal.Rptr.2d 745, 6 P.3d 669.)
"The oppression component arises from an inequality of bargaining power of the parties to the contract and an absence of real negotiation or a meaningful choice on the part of the weaker party. [Citations.]" (Kinney v. United HealthCare Services, Inc., supra, 70 Cal.App.4th at p. 1329, 83 Cal.Rptr.2d 348.)
The component of surprise arises when the challenged terms are "hidden in a prolix printed form drafted by the party seeking to enforce them. [Citation.]" (Kinney v. United HealthCare Services, Inc., supra, 70 Cal.App.4th at p. 1329, 83 Cal.Rptr.2d 348.) Where an adhesive contract is oppressive, surprise need not be shown. An employee's awareness of the employer's mandate that disputes be resolved in a nonjudicial forum "does not preclude a finding that the arbitration provision is nonetheless unenforceable. [Citation.]" (Id. at p. 1330, 83 Cal.Rptr.2d 348.)

b. Substantive Unconscionability
"`Substantive unconscionability' focuses on the terms of the agreement and whether those terms are `so one-sided as to "shock the conscience."' [Citations.]" (Kinney v. United HealthCare Services, Inc., supra, 70 Cal.App.4th at p. 1330, 83 Cal.Rptr.2d 348, italics omitted; see also Armendariz, supra, 24 Cal.4th at pp. 114, 115-121, 99 Cal.Rptr.2d 745, 6 P.3d 669.)
Courts have identified a number of factors that may result in substantive unconscionability. (See; e.g., Little, supra, 29 Cal.4th at pp. 1072-1074, 130 Cal.Rptr.2d 892, 63 P.3d 979 [provision for appeal of arbitration awards exceeding $50,000, which the court found unduly one-sided in employer's favor]; McManus v. CIBC World Markets Corp., supra, 109 Cal.App.4th at p. 93, 134 Cal.Rptr.2d 446 [imposition of forum costs on employee, which the court found unconscionable];[2]Pinedo v. Premium Tobacco Stores, Inc. (2000) 85 Cal.App.4th 774, 781, 102 Cal.Rptr.2d 435 [three factors: limitation on employee's damage recovery, requirement that arbitration be heard in Oakland, California, and proviso that employee pay all costs, which together made the agreement "at least equally unconscionable to the one presented in Armendariz"]; Stirlen v. Supercuts, Inc., supra, 51 Cal.App.4th at p. 1542, 60 Cal.Rptr.2d 138 [provision for employee's loss of job, salary, and benefits during pendency of arbitration, which the court characterized as the "most extreme burden" among several unconscionable clauses].)
But the paramount consideration in assessing conscionability is mutuality. "Substantively unconscionable terms may take various forms, but may generally be described as unfairly one-sided." (Little, supra, 29 Cal.4th at p. *437 1071, 130 Cal.Rptr.2d 892, 63 P.3d 979.) Agreements to arbitrate must contain at least "`a modicum of bilaterality'" to avoid unconscionability. (Armendariz, supra, 24 Cal.4th at p. 119, 99 Cal.Rptr.2d 745, 6 P.3d 669.) When only the weaker party's claims are subject to arbitration, and there is no reasonable justification for that lack of symmetry, the agreement lacks the requisite degree of mutuality. (Id. at pp. 119-120, 99 Cal.Rptr.2d 745, 6 P.3d 669; see also, e.g., O'Hare v. Municipal Resource Consultants, supra, 107 Cal.App.4th at pp. 273-279, 132 Cal.Rptr.2d 116; Mercuro v. Superior Court, supra, 96 Cal.App.4th at pp. 176-178, 116 Cal.Rptr.2d 671; Pinedo v. Premium Tobacco Stores, Inc., supra, 85 Cal.App.4th at p. 781, 102 Cal.Rptr.2d 435; Kinney v. United HealthCare Services, Inc., supra, 70 Cal.App.4th at pp. 1330-1332, 83 Cal.Rptr.2d 348; Stirlen v. Supercuts, Inc., supra, 51 Cal.App.4th at pp. 1536-1540, 60 Cal.Rptr.2d 138; cf., McManus v. CIBC World Markets Corp., supra, 109 Cal.App.4th at pp. 100-101, 134 Cal.Rptr.2d 446 [mutual agreement to arbitrate]; 24 Hour Fitness, Inc. v. Superior Court (1998) 66 Cal.App.4th 1199, 1205, 1212-1213, 78 Cal.Rptr.2d 533 [same].) As our high court recognized in Armendariz,"an arbitration agreement imposed in an adhesive context lacks basic fairness and mutuality if it requires one contracting party, but not the other, to arbitrate all claims arising out of the same transaction or occurrence or series of transactions or occurrences." (Armendariz, supra, 24 Cal.4th at p. 120, 99 Cal.Rptr.2d 745, 6 P.3d 669.) As the court also recognized, "lack of mutuality can be manifested as much by what the agreement does not provide as by what it does. [Citation.]" (Ibid.)
In sum, a wide variety of attributes may affect the determination of substantive unconscionability. But the key factor is lack of mutuality. And the determinative question is whether the contract terms are so harsh or one-sided that they lack basic fairness. (See Armendariz, supra, 24 Cal.4th at pp. 114, 120, 99 Cal.Rptr.2d 745, 6 P.3d 669.)

E. Severance
Arbitration agreements that fail to meet conscionability standards, or those that violate public policy, nevertheless may be enforced if the objectionable terms can be severed. (Little, supra, 29 Cal.4th at p. 1075, 130 Cal.Rptr.2d 892, 63 P.3d 979; Armendariz, supra, 24 Cal.4th at p. 124, 99 Cal.Rptr.2d 745, 6 P.3d 669; see also, e.g., Mercuro v. Superior Court, supra, 96 Cal.App.4th at p. 184, 116 Cal.Rptr.2d 671 [recognizing judicial authority to sever either "unconscionable or illegal" provision in arbitration agreement]; see generally, 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, §§ 430-432, pp. 386-389; id. (2003 supp.) p. 190.)

1. Statutory Authority
With respect to unconscionable agreements, the Legislature expressly and directly recognizes judicial discretion to sever objectionable provisions. The governing statute provides: "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." (Civ.Code, § 1670.5, subd. (a).)
The statutory authority for severing contract provisions that impermissibly burden public rights is less direct but equally authoritative. By statute, a contract must have a "lawful object." *438 (Civ.Code, §§ 1550, 1596.) Furthermore, "a law established for a public reason cannot be contravened by a private agreement." (Civ.Code, § 3513.) A contract that contravenes public policy thus is illegal. (See Tri-Q, Inc. v. Sta-Hi Corp. (1965) 63 Cal.2d 199, 218, 45 Cal.Rptr. 878, 404 P.2d 486 [courts will "withhold relief under the terms of an illegal contract" that "is violative of public policy"]; see generally, 1 Witkin, Summary of Cal. Law, supra, Contracts, § 430, p. 386.) Severance of such illegal provisions is contemplated by statute: "Where a contract has several distinct objects, of which one at least is lawful, and one at least is unlawful, in whole or in part, the contract is void as to the latter and valid as to the rest." (Civ.Code, § 1599.) Under the foregoing statutory authority, courts may enforce contracts that illegally contravene public rights, so long as the objectionable provisions can be severed. (1 Witkin, Summary of Cal. Law, supra, Contracts, § 431, pp. 387-388; see also, e.g., Mercuro v. Superior Court, supra, 96 Cal.App.4th at p. 184, 116 Cal.Rptr.2d 671; cf. Gutierrez v. Autowest, Inc. (2003) 114 Cal.App.4th 77, 7 Cal.Rptr.3d 267.)

2. Policy Underlying Severability
"Two reasons for severing or restricting illegal terms rather than voiding the entire contract appear implicit in case law. The first is to prevent parties from gaining undeserved benefit or suffering undeserved detriment as a result of voiding the entire agreement  particularly when there has been full or partial performance of the contract. [Citations.] Second, more generally, the doctrine of severance attempts to conserve a contractual relationship if to do so would not be condoning an illegal scheme. [Citations.]" (Armendariz, supra, 24 Cal.4th at pp. 123-124, 99 Cal.Rptr.2d 745, 6 P.3d 669.)
In determining whether to void the entire contract or merely sever objectionable terms, the "overarching" question for the court is whether severance serves the interests of justice. (Armendariz, supra, 24 Cal.4th at p. 124, 99 Cal.Rptr.2d 745, 6 P.3d 669.)

3. Factors Affecting Severability
In Armendariz, the California Supreme Court identified several factors that affect severability. (Armendariz, supra, 24 Cal.4th at pp. 124-125, 99 Cal.Rptr.2d 745, 6 P.3d 669.) Each relates to whether the contract is permeated by unconscionability or illegality. In simple terms, courts will not sever when the "good cannot be separated from the bad, or rather the bad enters into and permeates the whole contract, so that none of it can be said to be good...." (Mill and Lumber Co. v. Hayes (1888) 76 Cal. 387, 393, 18 P. 391, quoted in Armendariz, supra, 24 Cal.4th at p. 123, 99 Cal.Rptr.2d 745, 6 P.3d 669.)
One factor examines the contract's essential object. "If the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced. If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate." (Armendariz, supra, 24 Cal.4th at p. 124, 99 Cal.Rptr.2d 745, 6 P.3d 669.)
A second measure of the pervasiveness of a contract's illegality or unconscionability is whether the agreement contains more than one objectionable term. (Armendariz, supra, 24 Cal.4th at p. 124, 99 Cal.Rptr.2d 745, 6 P.3d 669.) The fact that an "arbitration agreement contains more than one unlawful provision" may "indicate a systematic effort to impose arbitration on an employee ... as an inferior *439 forum that works to the employer's advantage" and may warrant the conclusion "that the arbitration agreement is permeated by an unlawful purpose. [Citation.]" (Ibid.; cf., Little, supra, 29 Cal.4th at p. 1075, 130 Cal.Rptr.2d 892, 63 P.3d 979 [single unconscionable term].)
In a third and perhaps more practical test, courts will find a contract permeated by illegality or unconscionability when "there is no single provision a court can strike or restrict in order to remove the unconscionable taint from the agreement." (Armendariz, supra, 24 Cal.4th at pp. 124-125, 99 Cal.Rptr.2d 745, 6 P.3d 669.) In such situations, "the court would have to, in effect, reform the contract, not through severance or restriction, but by augmenting it with additional terms." (Id. at p. 125, 99 Cal.Rptr.2d 745, 6 P.3d 669.) Courts have no power to cure illegality by reformation or augmentation. (Ibid.) The only way a court can cure a contract's illegality is "through severance or restriction." (Ibid.) If the taint of illegality cannot be removed by those means, the court "must void the entire agreement." (Ibid.)

III. Application to This Case
We next discuss how the foregoing principles apply to this case. We address enforceability first as it relates to plaintiff's public rights claims and then as it concerns his other claims. We then consider the question of whether the unenforceable provisions are severable.

A. Public Rights
The agreement to arbitrate plaintiff's public rights claims is properly tested first against the standards set forth in Armendariz, as extended to nonstatutory actions by retroactive application of Little.

1. Retroactivity of Little

Although the Supreme Court issued its decision in Little after the trial court's grant of summary judgment in this case, Little nevertheless applies to this controversy. As a general rule, judicial decisions are given retroactive effect. (Brennan v. Tremco Inc. (2001) 25 Cal.4th 310, 318, 105 Cal.Rptr.2d 790, 20 P.3d 1086.) "Courts sometimes make an exception to this general rule when the decision changed a settled rule on which the parties had relied. [Citation.]" (Blake v. Ecker, supra, 93 Cal.App.4th at p. 740, 113 Cal.Rptr.2d 422, citing Brennan v. Tremco Inc., supra, 25 Cal.4th at p. 318, 105 Cal.Rptr.2d 790, 20 P.3d 1086; see also, e.g., Smith v. Rae-Venter Law Group (2002) 29 Cal.4th 345, 372, 127 Cal.Rptr.2d 516, 58 P.3d 367.) "But when a court is `merely deciding a legal question, not changing a previously settled rule,' there is no reason not to apply a judicial decision to a pending case. [Citation.]" (Blake v. Ecker, supra, 93 Cal.App.4th at p. 740, 113 Cal.Rptr.2d 422, citing Brennan v. Tremco Inc., supra, 25 Cal.4th at p. 318, 105 Cal.Rptr.2d 790, 20 P.3d 1086.) As one commentator has observed: "Appellate decisions in civil cases are almost always given retroactive effect and applied to all pending litigation. [Citations.]" (Eisenberg, et al., Cal. Practice Guide: Civil Appeals and Writs, supra ¶ 14:198, p. 14-67.)
We see no reason to depart from the general rule of retroactivity in this case. Little did not disturb a settled rule. (See Brennan v. Tremco Inc., supra, 25 Cal.4th at p. 318, 105 Cal.Rptr.2d 790, 20 P.3d 1086; cf., Smith v. Rae-Venter Law Group, supra, 29 Cal.4th at p. 372, 127 Cal.Rptr.2d 516, 58 P.3d 367.) To the contrary, as the trial court itself acknowledged, the law in this area was uncertain at the time summary judgment was granted, *440 since Little was then pending in the Supreme Court. Furthermore, Armendariz already has been applied retroactively by an appellate court. (Blake v. Ecker, supra, 93 Cal.App.4th at pp. 740-741, 113 Cal.Rptr.2d 422.) Little should be applied retroactively as well.
Giving Little its proper retroactive application, we analyze plaintiff's nonstatutory public rights claims according to Armendariz.

2. Armendariz Analysis
As explained above, Armendariz imposes certain minimum requirements on agreements to arbitrate employment claims that implicate unwaivable public rights. Those requirements include a limitation on the employee's forum costs. (See Armendariz, supra, 24 Cal.4th at pp. 91, 110-111, 99 Cal.Rptr.2d 745, 6 P.3d 669; Little, supra, 29 Cal.4th at p. 1081, 130 Cal.Rptr.2d 892, 63 P.3d 979.) As our high court has acknowledged, unwaivable public rights "may be transgressed as much by the imposition of undue costs as by outright denial." (Armendariz, supra, 24 Cal.4th at p. 109, 99 Cal.Rptr.2d 745, 6 P.3d 669.) For that reason, the California Supreme Court established this categorical rule: an employee seeking to vindicate unwaivable rights may not be compelled to pay forum costs that are unique to arbitration. (Id. at p. 110, 99 Cal.Rptr.2d 745, 6 P.3d 669; accord, Little, supra, 29 Cal.4th at p. 1085, 130 Cal.Rptr.2d 892, 63 P.3d 979.)
As the undisputed evidence in this case demonstrates, the arbitration agreement required plaintiff to pay half of the costs of the arbitration, which amounted to thousands of dollars in AAA fees at the very threshold. Those costs, which are unique to the arbitral forum, are impermissible under Armendariz and Little. It is noteworthy that in each of those landmark cases, the arbitration agreement was silent on the question of costs. (Armendariz, supra, 24 Cal.4th at p. 113, 99 Cal.Rptr.2d 745, 6 P.3d 669; Little, supra, 29 Cal.4th at pp. 1081-1082, 130 Cal.Rptr.2d 892, 63 P.3d 979.) The Supreme Court concluded that silence on costs is not grounds for denying enforcement; rather, the lack of an express cost-sharing provision merely permits the court to infer the employer's obligation to pay forum costs unique to arbitration. (Armendariz, supra, 24 Cal.4th at p. 113, 99 Cal.Rptr.2d 745, 6 P.3d 669; Little, supra, 29 Cal.4th at p. 1082, 130 Cal.Rptr.2d 892, 63 P.3d 979.) Here, by contrast, the agreement expressly imposes impermissible forum costs on the employee, in violation of public policy. This particular agreement thus does not permit an inference that the employer is to pay. Therefore, the cost-sharing provision here is illegal and unenforceable.
Given our conclusion that this agreement fails to satisfy the requirements of Armendariz, we need not consider its conscionability with respect to plaintiff's public rights. Rather, we analyze unconscionability only in relation to plaintiff's other claims.

B. Private Rights
As discussed above, the enforceability of the agreement to arbitrate plaintiff's private employment rights is measured against established conscinability standards. (See, e.g., Armendariz, supra, 24 Cal.4th at pp. 113-114, 99 Cal.Rptr.2d 745, 6 P.3d 669.) We analyze the agreement for procedural and substantive unconscionability, both of which must be present in order to find the agreement unenforceable. (Id. at p. 114, 99 Cal.Rptr.2d 745, 6 P.3d 669.)

*441 1. Procedural Unconscionability
In assessing procedural unconscionability, the relevant factors are oppression and surprise. (Kinney v. United HealthCare Services, Inc., supra, 70 Cal.App.4th at p. 1329, 83 Cal.Rptr.2d 348; see also Armendariz, supra, 24 Cal.4th at pp. 114-115, 99 Cal.Rptr.2d 745, 6 P.3d 669.)

a. Oppression
"Procedural unconscionability turns on adhesiveness  a set of circumstances in which the weaker or `adhering' party is presented a contract drafted by the stronger party on a take it or leave it basis. To put it another way, procedural unconscionability focuses on the oppressiveness of the stronger party's conduct." (Mercuro v. Superior Court, supra, 96 Cal.App.4th at p. 174, 116 Cal.Rptr.2d 671, fns. omitted.)
We first consider the existence of "an inequality of bargaining power of the parties to the contract." (Kinney v. United HealthCare Services, Inc., supra, 70 Cal.App.4th at p. 1329, 83 Cal.Rptr.2d 348.) In other words, was plaintiff the weaker party with respect to negotiation of the arbitration clause? Defendants argue that plaintiff's "claim of inferior bargaining power is belied" by his allegations that "he won substantial and unusual concessions during his pre-employment negotiations with Juniper." We reject that argument. Plaintiff's ability to negotiate other aspects of his employment with Juniper has no bearing on the question of whether he had power to negotiate the arbitration provision. (Graham v. Scissor-Tail, Inc., supra, 28 Cal.3d at p. 819, 171 Cal.Rptr. 604, 623 P.2d 165; Stirlen v. Supercuts, Inc., supra, 51 Cal.App.4th at p. 1533, 60 Cal.Rptr.2d 138.) Defendants also cite plaintiff's status as a person of "substantial renown" in his profession as proof of his equal bargaining power. Again, however, plaintiff's business stature and skills do not demonstrate his power to bargain with respect to arbitration. (Cf. Graham v. Scissor-Tail, Inc., supra, 28 Cal.3d at p. 812, 171 Cal.Rptr. 604, 623 P.2d 165 [contract adhesive, even though plaintiff was "an experienced promoter and producer of musical concerts"]; Stirlen v. Supercuts, Inc., supra, 51 Cal.App.4th at p. 1533, 60 Cal.Rptr.2d 138 [contract adhesive, even though plaintiff was "a successful and sophisticated corporate executive"].) "The suggestion that a contract or clause cannot be unconscionable if it is accepted by a knowledgeable party has been repudiated by our Supreme Court." (Stirlen v. Supercuts, Inc., supra, 51 Cal.App.4th at p. 1534, 60 Cal.Rptr.2d 138, citing Graham v. Scissor-Tail, Inc., supra, 28 Cal.3d at p. 820, 171 Cal.Rptr. 604, 623 P.2d 165.)
We next consider the "absence of real negotiation or a meaningful choice on the part of the weaker party. [Citations.]" (Kinney v. United HealthCare Services, Inc., supra, 70 Cal.App.4th at p. 1329, 83 Cal.Rptr.2d 348; see also Armendariz, supra, 24 Cal.4th at pp. 114-115, 99 Cal.Rptr.2d 745, 6 P.3d 669.) In other words, was the arbitration clause presented on a take it or leave it basis? According to plaintiff's uncontroverted declaration, he "was not permitted to negotiate the terms of the Offer Letter or the Employment Agreement, but was given to understand that all Juniper employees were required to sign these documents as a condition of employment." Significantly, defendants offered no evidence to the contrary. Furthermore, the contract itself corroborates plaintiff's understanding that no negotiation concerning arbitration was possible, since it contains a provision requiring his acknowledgement that he was "offered employment in consideration of [his] promise to arbitrate claims." (Cf. O'Hare v. Municipal Resource Consultants, supra, 107 *442 Cal.App.4th at p. 284, 132 Cal.Rptr.2d 116 ["reasonable to infer procedural unconscionability" from face of contract].) Given the undisputed evidence in this case, it is clear that plaintiff had no meaningful choice about arbitration.
In sum, plaintiff lacked equal bargaining power with respect to the arbitration agreement, which was presented on a take it or leave it basis. The circumstances of this case thus demonstrate a high degree of oppressiveness.

b. Surprise
We next consider the element of surprise, which is often identified as a component of procedural unconscionability. Defendants argue the absence of surprise in this case. As we observed above, however, surprise is not a necessary predicate to a finding of procedural unconscionability. (See Kinney v. United HealthCare Services, Inc., supra, 70 Cal.App.4th at p. 1330, 83 Cal.Rptr.2d 348; see also, e.g., McManus v. CIBC World Markets Corp., supra, 109 Cal.App.4th at p. 91, 134 Cal.Rptr.2d 446 [finding procedural unconscionability on the basis of oppressiveness alone]; Mercuro v. Superior Court, supra, 96 Cal.App.4th at pp. 174-175, 116 Cal.Rptr.2d 671 [same].) Procedural unconscionability may result from "surprise or oppression." (Blake v. Ecker, supra, 93 Cal.App.4th at p. 742, 113 Cal.Rptr.2d 422, italics added; see also, e.g., O'Hare v. Municipal Resource Consultants, supra, 107 Cal.App.4th at p. 282, 132 Cal.Rptr.2d 116 [same].) When a contract is oppressive, awareness of its terms does not preclude a finding of procedural unconscionability. (Kinney v. United HealthCare Services, Inc., supra, 70 Cal.App.4th at p. 1330, 83 Cal.Rptr.2d 348.)
Even without the element of surprise, we conclude that the arbitration provision here is procedurally unconscionable because of its oppressiveness.

2. Substantive Unconscionability
In assessing substantive unconscionability, the paramount consideration is mutuality. A "unilateral arbitration agreement imposed by the employer without reasonable justification" is substantively unconscionable. (Armendariz, supra, 24 Cal.4th at p. 120, 99 Cal.Rptr.2d 745, 6 P.3d 669; accord, Little, supra, 29 Cal.4th at p. 1071, 130 Cal.Rptr.2d 892, 63 P.3d 979.) We therefore examine the challenged arbitration provisions for mutuality.
Both the offer letter and the employment agreement contain arbitration provisions.[3] Both provisions require the *443 parties to arbitrate all claims  except those related to trade secrets, confidential information, and other intellectual property. The arbitration clauses thus include what Juniper terms "a trade secret carve-out," which permits resort to the courts for certain relief.
Defendants defend the carve-out, asserting that it applies equally to both parties.
We reject that assertion.
First, with respect to the offer letter, we observe that its carve-out is explicitly unilateral. It grants only "the Company" the right to seek injunctive relief in court for "misuse or appropriation of the Company's trade secrets or confidential and proprietary information."
Turning next to the employment agreement, its carve-out provision nominally grants "both parties" the right to seek judicial relief. But closer examination demonstrates that it also lacks mutuality. It first states: "This arbitration clause constitutes a waiver of employee's right to a jury trial" of all disputes arising out of the employment relationship, specifically including all of his potential claims. (Italics added; capitalization omitted.) The contractual arbitration clause then explicitly excludes all claims that the employer would be likely to assert against the employee. As to that point, it required plaintiff to accede: "I agree that it would be impossible or inadequate to measure and calculate the Company's damages from any breach of the covenants [protecting intellectual property]. Accordingly, I agree that if I breach any of [those covenants], both parties will have ... the right to obtain" specified judicial remedies, including injunctive relief and specific performance. (Italics added; capitalization omitted.) This carve-out in the employment contract thus addresses only the employee's breach of covenants designed to protect only the employer's interests. It *444 therefore lacks mutuality, both facially and operationally. (See, e.g., Armendariz, supra, 24 Cal.4th at p. 120, 99 Cal.Rptr.2d 745, 6 P.3d 669 ["clear implication" was that only employee claims were subject to arbitration]; O'Hare v. Municipal Resource Consultants, supra, 107 Cal.App.4th at p. 279, 132 Cal.Rptr.2d 116 [agreement "did not simply `carve out'" injunctive relief; rather it was "completely one-sided" in compelling only the employee to arbitrate his claims]; Pinedo v. Premium Tobacco Stores, Inc., supra, 85 Cal.App.4th at p. 781, 102 Cal.Rptr.2d 435 [only claims that "would normally be brought by the employee" were subject to arbitration]; Stirlen v. Supercuts, Inc., supra, 51 Cal.App.4th at p. 1540-1541, 60 Cal.Rptr.2d 138 ["realistically" only employee claims would be arbitrated].)
To sum up, the arbitration provisions challenged in this case are entirely lacking in mutuality and basic fairness. As a result, they are substantively unconscionable.

3. Conclusion
Considering both substantive unconscionability, which is demonstrated by the extremely one-sided nature of the arbitration provision at issue in this case, and procedural unconscionability, which results from the high degree of oppressiveness, we find the agreement to arbitrate unconscionable as a matter of law. (See Armendariz, supra, 24 Cal.4th at pp. 114, 120, 99 Cal.Rptr.2d 745, 6 P.3d 669.)

C. Severance
Having found the agreement both illegal on public policy grounds and unconscionable on ordinary contractual grounds, we consider whether the objectionable terms are capable of being severed or restricted, so that the rest of the agreement may be enforced. In undertaking that analysis, we first apply the factors related to severance identified in Armendariz. (See Armendariz, supra, 24 Cal.4th at pp. 124-125, 99 Cal.Rptr.2d 745, 6 P.3d 669.) We then consider the policy implications relevant to the analysis.

1. Factors
One relevant factor in assessing severability is whether the agreement contains more than one objectionable term. (Armendariz, supra, 24 Cal.4th at p. 124, 99 Cal.Rptr.2d 745, 6 P.3d 669.) Here, there are at least two such terms, one that affects unwaivable public rights and another that affects waivable private rights. As to the first, the contract's cost-sharing provision is illegal under Armendariz and Little. It hinders the vindication of unwaivable Tameny claims and thus violates public policy. As to the second, the agreement is unconscionable under ordinary contract analysis because it lacks mutuality. The combination of these two provisions demonstrates that the agreement is permeated with illegality and unconscionability. (Cf. O'Hare v. Municipal Resource Consultants, supra, 107 Cal.App.4th at p. 279, 132 Cal.Rptr.2d 116 [agreement was permeated with unconscionability by a single factor, lack of mutuality].)
Another consideration weighing against severance in this case is the fact that "there is no single provision [we] can strike or restrict in order to remove the unconscionable [or illegal] taint from the agreement." (Armendariz, supra, 24 Cal.4th at pp. 124-125, 99 Cal.Rptr.2d 745, 6 P.3d 669.) "We cannot save the contract by simply hacking off the provisions governing what claims are arbitrable [and] how fees and costs will be allocated.... If we did so there would be virtually nothing of substance left to the contract." (Mercuro v. Superior Court, supra, 96 Cal.App.4th at p. 185, 116 Cal. *445 Rptr. 2d 671.) If we strike the unlawful cost provision, that still leaves intact the unconscionable unilateral forum provision. If we then strike the whole of the forum provision, nothing is left of the agreement to arbitrate. If we strike only the unilateral aspects of that provision, the result offends the policies underlying severance, as we now explain.

2. Policy
The California Supreme Court has identified two reasons to sever or restrict objectionable terms as an alternative to invalidating the entire agreement. One is "to conserve a contractual relationship if to do so would not be condoning an illegal scheme. [Citations.]" (Armendariz, supra, 24 Cal.4th at p. 124, 99 Cal.Rptr.2d 745, 6 P.3d 669.) The other is "to prevent parties from gaining undeserved benefit or suffering undeserved detriment as a result of voiding the entire agreement  particularly when there has been full or partial performance of the contract. [Citations.]" (Id. at pp. 123-124, 99 Cal.Rptr.2d 745, 6 P.3d 669.)
Now that the parties' employment relationship has ended, neither reason applies here. First, there obviously is no contractual relationship to preserve. Second, severing only the unilateral aspects of this arbitration agreement would produce rather than prevent undeserved benefit and detriment. It would subject all claims to arbitration  both the employee's, which already were subject to arbitration under the contract as written, and the employer's, which previously were subject to litigation at its option. So far as the record discloses, the employer in this case has no claims against its former employee. Furthermore, with the employment relationship now at an end, no employer claim is likely to arise in the future. The employee, meanwhile, is still trying to prosecute his claims against the employer. In effect, selective severance would relegate only the employee to the arbitration forum. Severance thus would promote  not prevent  both an undeserved benefit to the employer and an undeserved detriment to the employee. Clearly then, in this case, severance would not serve the interests of justice, which is the "overarching" consideration in the severability determination. (Armendariz, supra, 24 Cal.4th at p. 124, 99 Cal.Rptr.2d 745, 6 P.3d 669.)

3. Conclusion
The taint of illegality and unconscionability cannot be removed from this arbitration agreement by severing or restricting the objectionable terms. The agreement thus is wholly unenforceable as a matter of law. For that reason, the court erred in granting defendants' motion to compel arbitration and in making its subsequent arbitration orders.[4]

SUMMARY OF CONCLUSIONS

I. Summary Judgment
The trial court's grant of summary judgment was improper.
Procedurally, defendants failed to carry their initial burden of production on the defense of exhaustion of remedies. Furthermore, plaintiff raised a triable material fact issue on the question of his ability to proceed in the arbitration forum.
Substantively, summary judgment is not supportable here, given the current state of the law.

*446 II. Arbitration
With respect to plaintiff's unwaivable public rights claims, Armendariz governs the analysis, given the retroactive application of Little. Under Armendariz, the arbitration agreement is illegal because of its cost-sharing provision.
With respect to plaintiff's other claims, we test the validity of the arbitration agreement under established conscionability standards. The agreement to arbitrate is procedurally unconscionable because it is oppressive. It is substantively unconscionable because it lacks mutuality and basic fairness.
Because illegality and unconscionability permeate the agreement, its objectionable terms cannot be severed. As a result, the entire arbitration agreement is void and unenforceable. The trial court thus erred in compelling arbitration.

DISPOSITION
We reverse the judgment.
We remand the matter to the trial court with instructions to: (1) vacate its order of June 12, 2000, which granted defendants' motion to compel arbitration; and (2) conduct further judicial proceedings as necessary to resolve plaintiff's claims on their merits.
Plaintiff shall have costs on appeal.
WE CONCUR: PREMO and ELIA, JJ.
NOTES
[*] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of Threshold Issues, Part I (Dismissal) and Discussion, Part I (Summary Judgment).
[**] George, C.J., and Werdegar, J., did not participate therein.
[1] The individual defendants (and their positions with Juniper at the time this action was filed) are: Scott Kriens (chief executive officer); Alison Seaman (director of corporate marketing); Joseph Furgerson (vice president of corporate marketing); and Marcel Gani (chief financial officer).
[**] See footnote *, ante.
[***] See footnote *, ante.
[2] Relying on Armendariz and Little, the majority in McManus concluded that an agreement imposing mandatory arbitration costs on an employee is substantively unconscionable. (McManus v. CIBC World Markets Corp., supra, 109 Cal.App.4th at p. 93, 134 Cal.Rptr.2d 446; but cf. id. at p. 103, 134 Cal.Rptr.2d 446 (conc. opn. of Mosk, J.).) In reaching that conclusion, the McManus majority may have intended to ban the imposition of such costs, regardless of the nature of the employee's claims as public or private. While there may be good reasons to extend Armendariz and Little to purely private claims, we are not called upon to analyze that question in this case. Given our conclusion that this agreement is substantively unconscionable on other grounds, we need not decide here whether a cost-sharing provision that affects only private, waivable employment rights is a relevant factor in conscionability analysis.
[3] The arbitration provision in the offer letter reads in full as follows: "Arbitration. Any claim, dispute or controversy arising out of this Agreement, the interpretation, validity or enforceability of this Agreement or the alleged breach therefor shall be submitted by the parties to binding arbitration by the American Arbitration Association, provided, however, that this arbitration provision shall not preclude the Company from seeking injunctive relief from any court having jurisdiction with respect to any disputes or claims relating to or arising out of the misuse or appropriation of the Company's trade secrets or confidential and proprietary information. Judgment may be entered on the award of the arbitration in any court having jurisdiction."

The arbitration provision in the employment agreement reads in full as follows: "Arbitration and Equitable Relief. (a) Arbitration. Except as provided in section 10(b) below, both parties agree that any dispute or controversy arising out of, relating to, or concerning any interpretation, construction, performance or breach of this agreement, shall be settled by arbitration to be held in Santa Clara County, California, in accordance with the Employment Dispute Resolution Rules then in effect of the American Arbitration Association. The arbitrator, such arbitrator to be chosen by mutual agreement of both parties, may grant injunctions or other relief in such dispute or controversy. The decision of the arbitrator shall be final, conclusive and binding on the parties to the arbitration. Judgment may be entered on the arbitrator's decision in any court having jurisdiction. The company and I shall each pay one-half of the costs and expenses of such arbitration, and each of us shall separately pay our counsel fees and expenses.
"This arbitration clause constitutes a waiver of employee's right to a jury trial and relates to the resolution of all disputes relating to all aspects of the employer/employee relationship (except as provided in section 10(b) below), including, but not limited to, the following claims: [¶] i. Any and all claims for wrongful discharge of employment; breach of contract, both express and implied; breach of the covenant of good faith and fair dealing, both express and implied; negligent or intentional infliction of emotional distress; negligent or intentional misrepresentation; negligent or intentional interference with contract or prospective economic advantage; and defamation; [¶] ii. Any and all claims for violation of any federal, state or municipal statute, including, but not limited to, Title VIII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Age Discrimination in Employment Act of 1967, the Americans with Disabilities Act of 1990, the Fair Labor Standards Act, the California Fair Employment and Housing Act, and Labor Code Section 201, et seq; [¶] iii. Any and all claims arising out of any other laws and regulations relating to employment or employment discrimination. [¶] (b) Equitable Remedies. I agree that it would be impossible or inadequate to measure and calculate the company's damages from any breach of the covenants set forth in sections 2, 3, and 5 herein. Accordingly, I agree that if I breach any of such sections, both parties will have available, in addition to any other right or remedy available, the right to obtain an injunction from a court of competent jurisdiction restraining such breach or threatened breach and to specific performance of any such provision of ties agreement. Both parties further agree that no bond or other security shall be required in obtaining such equitable relief. [¶] (c) Consideration. I understand that each party's promise to resolve claims by arbitration in accordance with the provisions of this agreement, rather than through the courts, is consideration for other party's like promise. I further understand that I am offered employment in consideration of my promise to arbitrate claims."
[4] Given our conclusion, we need not and do not reach plaintiff's contentions concerning the type of evidentiary hearing required on a motion to compel arbitration. (Cf., Amalgamated Transit Union Local 1277 v. Los Angeles County Metropolitan Transportation Authority (2003) 107 Cal.App.4th 673, 684, 132 Cal.Rptr.2d 207.)