[No. B136617. Second Dist., Div. Four. Mar. 20, 2001.]

LUPE S. ROMO, Plaintiff and Respondent, v.
Y-3 HOLDINGS, INC., et al., Defendants and Appellants.

1154

**COUNSEL**

Lewis, D'Amato, Brisbois & Bisgaard, Daniel Parker Jett and John L. Barber for Defendants and Appellants.

Gail C. Kaplan; Pine & Pine and Norman Pine for Plaintiff and Respondent.

## OPINION

**HASTINGS, J.**—Appellants Y-3 Holdings, Inc., and Merv York appeal from an order denying arbitration of a lawsuit filed by respondent, ex-employee Lupe S. Romo, arising from termination of her employment. We conclude that the trial court did not err in concluding no agreement to arbitrate existed between the parties, and we affirm.

### STATEMENT OF FACTS

Respondent was continuously employed by appellants from April 3, 1980, through her firing on May 15, 1998.

On May 13, 1999, respondent filed a complaint alleging the following causes of action: breach of implied in fact contract; violation of California Constitution, article I, section 1 and article I, section 3; wrongful termination in violation of public policy; fraud; and breach of the covenant of good faith and fair dealing. A first amended complaint alleging the same basic claims was filed on June 3, 1999.

On July 27, 1999, appellants filed a "Notice of Motion and Motion . . . to Dismiss or Stay Action and Compel Arbitration." The motion alleged an agreement to arbitrate contained within an employee handbook distributed to respondent in January 1998. A copy of the 44-page employee handbook was attached as an exhibit to the motion.

The handbook is divided into nine sections headed by Roman numerals. Section No. VIII is contained at pages 39-41 and is titled "MUTUAL AGREEMENT TO ARBITRATE CLAIMS." At page 39, under the subheading "Agreement to Arbitrate," the following is contained: "Except as otherwise provided in this Agreement [not relevant to our discussion], the company and the employee hereby consent to the resolution by arbitration of all claims or controversies for which a court otherwise would be authorized by law to grant relief, in any way arising out of, relating to or associated with the employee's employment with the company, or its termination ('claims'), that the company may have against the employee or that the employee may have against the company or against its officers, directors, employees or agents in their capacity as such or otherwise. The claims covered by this Agreement include, but are not limited to, claims for wages or other compensation due; claims for breach of any contract or covenant, express or implied; tort claims; claims for discrimination, including but not limited to discrimination based on race, sex, religion, national origin, age, marital status, handicap, disability or medical condition; claims for benefits, except as excluded in the

following paragraph [not relevant]; and claims for violation of any federal, state or other governmental constitution, statute, ordinance or regulation."

The final page of section VIII, page 41, contains lines for dates and signatures of the employee and the employer, neither of which is signed or dated.

At pages 43-44, after section IX of the employee handbook, titled "ARBI-TRATION PROCEDURE," is an unnumbered heading titled "EMPLOYEE AC-KNOWLEDGMENT" which has a place for date and signature by the employee. Page 44 contains the date "3-30-98" and is signed by respondent. The acknowledgment states as follows:

"I acknowledge receipt of my copy of the handbook entitled 'Y-3 Hold-ings, Inc. Employee Handbook.' I have read and understood its contents, including company policies and rules governing my conduct, wages and working conditions as an employee. I understand that this Handbook super-sedes and replaces any prior company Handbook. I agree to abide by these policies and rules during my employment, and understand the consequences if I do not.

"I hereby acknowledge that my employment is 'at-will,' that because I may resign at any time for any reason, the company may terminate my employment at any time with or without cause; I understand that no em-ployee or other representative of the company can modify this policy in any manner or enter into any agreement that is contrary to this policy unless it is in writing and signed by the President of the company.

"I understand that any and all benefits, policies and procedures set forth herein are statements of general company policy and shall, in no manner, be construed to imply a contract or a guarantee of continuing employment with the company or employment for any specific length of time.

"I understand that the company reserves the right to eliminate, modify and improve any an[d] all of its wages, hours and working conditions, including the benefits, policies and rules explained herein at any time with or without notice.

"I understand that all representations by any manager or other employee of the company that conflict in any respect with any matter set forth in this handbook are invalid unless specifically acknowledged in writing by the President of the company."

Appellants' motion was set for hearing on September 14, 1999.

On August 6, 1999, in response to service of appellants' motion, counsel for respondent filed an ex parte application to shorten time to file a motion for relief to file a second amended complaint. In support of the application, counsel for respondent advised the court that she was unaware of the arbitration agreement contained within the employee handbook and desired to file a second amended complaint adding a claim for fraud in connection with respondent's signature at the end of the handbook. The application was granted, respondent filed the motion for leave to file a second amended complaint which was granted, and a second amended complaint was deemed filed on September 2, 1999. The second amended complaint added a cause of action alleging that respondent's signature obtained by appellants after the heading titled "EMPLOYEE ACKNOWLEDGMENT" was obtained by fraud.

Respondent filed opposition to appellants' motion to compel arbitration raising a number of arguments. First, she argued that respondent and appellants never entered into the arbitration agreement contained within the employee handbook. "The arbitration provision in the Employee Handbook is unenforceable because no contract was formed. [Respondent] did not intend to arbitrate her disputes with [appellants] and did not physically sign an arbitration agreement. She, however, did sign an ambiguous document drafted by [appellants] which does not include the arbitration provision." Alternatively, she argued: "Even if a contract is found to have been formed, it is void because it was fraudulently executed and because it is both procedurally and subjectively unconscionable."

Respondent's declaration was filed in support of her opposition. She declared that she did not date and sign that portion of the employee handbook providing for arbitration, section VIII, but that she did sign that portion of the handbook titled "EMPLOYEE ACKNOWLEDGMENT" after being told it would not trigger the arbitration provisions of section VIII.

Appellants filed a reply in which they did not contest respondent's declaration that she did not sign under section VIII. Instead, they argued that respondent's signature of the "EMPLOYEE ACKNOWLEDGMENT" at the end of the employee agreement bound her to "all matters included within the employee handbook." They also contested her position that her signature was obtained by fraud and argued any evidence offered by her on the issue was barred by the parol evidence doctrine.

The trial court denied the motion in a minute order: "Motion is denied with prejudice. The Court finds that since the Second Amended Complaint alleges that plaintiff was fraudulently induced into signing the Employee Handbook acknowledgment (pages 44 and 44A of the Employee Handbook),

and that the acknowledgment which immediately follows the section entitled 'Mutual Agreement to Arbitrate Claims' (pages 41 and 41A of the Employee Handbook) was never apparently signed, the arbitration provisions of the employee handbook may not be enforceable."

A timely notice of appeal was filed by appellants.

## DISCUSSION

■ "Code of Civil Procedure section 1281.2 provides in material part: 'On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy . . . , the court shall order the petitioner and the respondent to arbitrate the controversy *if it determines that an agreement to arbitrate the controversy exists . . . .*' . . . Thus, '[t]he right to arbitration depends upon contract; a petition to compel arbitration is simply a suit in equity seeking specific performance of that contract. [Citations.]' . . . There is no public policy in favor of forcing arbitration of issues the parties have not agreed to arbitrate. [Citation.] It follows that when presented with a petition to compel arbitration, the trial court's first task is to determine whether the parties have in fact agreed to arbitrate the dispute. [¶] We apply general California contract law to determine whether the parties formed a valid agreement to arbitrate. [Citations.]" (*Marcus & Millichap Real Estate Investment Brokerage Co. v. Hock Investment Co.* (1998) 68 Cal.App.4th 83, 88-89 [80 Cal.Rptr.2d 147], italics added by *Marcus & Millichap.*)

■ On appeal, appellants reprise their argument that respondent's signature following the "EMPLOYEE ACKNOWLEDGMENT" heading of the employee handbook binds her to the terms of arbitration contained within section VIII of the employee handbook. We disagree.

■ First, we do agree with appellants that "[i]nterpretation of a written document where extrinsic evidence is unnecessary is a question of law for independent review by the Court of Appeal. (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865-866 [44 Cal.Rptr. 767, 402 P.2d 839]; *Horsemen's Benevolent & Protective Assn. v. Valley Racing Assn.* (1992) 4 Cal.App.4th 1538, 1559 [6 Cal.Rptr.2d 698].)"

In interpreting contracts, "[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." (Civ. Code, § 1641.) Additionally: "In the construction of a statute or instrument, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not

to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all." (Code Civ. Proc., § 1858.)

 Utilizing these principles, we conclude that the employee handbook contains two separate and severable agreements: (1) the agreement to arbitrate which is the subject of section VIII; and (2) an agreement to be bound by the "benefits," "policies," "rules" and "procedures" contained within the remaining sections of the employee handbook. Our conclusion is based upon the disparate language between section VIII and the remaining portions of the employee handbook.

The preamble to section VIII begins by identifying "this Mutual Agreement to Arbitrate" as " 'the Agreement.' " Thereafter, the terms of section VIII consistently refer to "this Agreement" or to "[t]his Agreement to Arbitrate." Nowhere within that portion of the employee agreement titled "EMPLOYEE ACKNOWLEDGMENT" (pp. 43-44), the portion signed by respondent, is there any reference to "the Mutual Agreement to Arbitrate" or to "the Agreement" or to an "Agreement to Arbitrate." In fact, the words "arbitrate" and "arbitration" are not found within this portion of the employee handbook. Rather, the terms used are "benefits," "rules," "policies" and "procedures." These terms appear to be explained within paragraph 3 at page 44: "I understand that any and all *benefits*, *policies* and *procedures* set forth herein are statements of general company *policy* and shall, in no manner, *be construed to imply a contract. . . .*" (Italics added.) We cannot construe this language to include reference to "the Agreement" from section VIII.

Additionally, the language within section VIII suggests that it is intended as a complete stand-alone agreement. Under the subheading titled "Sole and Entire Agreement," the following is found: "This is the complete agreement of the parties *on the subject of arbitration of disputes*, except for any arbitration provision contained in any pension or benefit plan.[1] This Agreement supersedes any prior or contemporaneous oral or written agreement or understanding on the subject. In executing this Agreement, neither party is relying on any representation, oral or written, on the subject of the effect, enforceability or meaning of this Agreement, except as specifically set forth in this Agreement." (Italics added.)

The fact that section VIII contemplates a signature from the employee separate from that required after the heading "EMPLOYEE ACKNOWLEDGMENT," as well as a signature by the employer, suggests a separate and severable agreement.

---

[1] Not argued by appellants to be at issue.

Finally, that this is meant to be a completely stand-alone agreement is confirmed by the following language immediately preceding the signature lines of section VIII: "EMPLOYEE ACKNOWLEDGES THAT HE OR SHE HAS CAREFULLY READ THIS AGREEMENT, THAT HE OR SHE UNDERSTANDS ITS TERMS, THAT ALL UNDERSTANDINGS BETWEEN THE EMPLOYEE AND THE COMPANY RELATING TO THE SUBJECTS COVERED IN THIS AGREEMENT ARE CONTAINED IN IT. . . ." (Capitals in original.)

We borrow language from *Marcus & Millichap Real Estate Investment Brokerage Co. v. Hock Investment Co.*, *supra*, 68 Cal.App.4th at page 91: "In sum, we conclude that, read as a whole, the [arbitration agreement within the employment handbook] in this case contemplated that the arbitration of disputes provision would be effective only if both [parties] assented to that [particular] provision. Since the [parties] did not assent to this [particular] provision the parties did not agree to binding arbitration."

### DISPOSITION

The order denying arbitration is affirmed. Costs are awarded to respondent.

Vogel (C. S.), P. J., and Epstein, J., concurred.