FILED

JUL 03 2014

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| TAYLER BAYER, | No. 11-17920 |
| Plaintiff - Appellee, | D.C. No. 3:11-cv-03705-MEJ |
| v. | |
| NEIMAN MARCUS HOLDINGS, INC., | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Northern District of California
Maria-Elena James, Magistrate Judge, Presiding

Argued and Submitted October 18, 2013
San Francisco, California

Before: THOMAS and McKEOWN, Circuit Judges, and KENDALL, District Judge.[**]

Neiman Marcus Holdings, Inc. ("Neiman") appeals from the district court's

order denying its motion to compel arbitration. We affirm.

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**]     The Honorable Virginia M. Kendall, District Judge for the U.S. District Court for the Northern District of Illinois, sitting by designation.

I

Bayer commenced work with Neiman in 2006.  He was diagnosed with emphysema in 2007 and placed on medical leave.  He was authorized by his physician to return to work on June 1, 2007, subject to medical restrictions on his work, including working no more than eight hour shifts, four days a week.  Bayer alleges that Neiman refused to accommodate this schedule, which resulted in his loss of status as a full-time employee and concomitant benefits.  He filed an administrative complaint with the Equal Employment Opportunity Commission ("EEOC") on June 20, 2007.

On that same day, all Neiman employees were mailed notice of a dispute resolution program, which included a mandatory arbitration agreement ("Arbitration Agreement").  The mailing included an acknowledgment form ("Acknowledgment Form") that required the employee's signature.  The Acknowledgment Form indicated that the employee was "waiving the right to a trial by jury or trial before a judge in a court of law."  The Acknowledgment Form also required the employee to express his or her understanding that the arbitration provisions were "not optional," but rather they were "mandatory, and a condition and term of my employment if I am employed or continue employment on or after July 15, 2007."

Bayer refused to sign the Acknowledgment Form. Instead, he filed a second administrative complaint with the EEOC, alleging that Neiman had discriminated against him in violation of his rights under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et. seq.* ("A.D.A.") by attempting to coerce him into signing the Arbitration Agreement as a condition of continued employment.

After the EEOC issued a right to sue letter on his first administrative complaint, Bayer filed a federal civil suit alleging disability discrimination under the A.D.A. because of Neiman's alleged refusal to accommodate his disability. The parties settled that action, but they specifically excluded from the release any claims Bayer might have with respect to challenging the validity or enforceability of the Arbitration Agreement.

Bayer continued his employment throughout 2008. On at least four occasions between July 2007 and September 2008, he refused to sign arbitration-related forms. On at least four occasions, he told his supervisors that he was refusing to agree to or be bound by the Arbitration Agreement. He delivered two letters to Neiman explaining why he had refused to sign the Acknowledgment Form and other arbitration-related forms, and why he was refusing to be a party to the Arbitration Agreement.

Neiman terminated him in January 2009. In response, Bayer filed a third EEOC complaint, alleging he was terminated in retaliation for filing EEOC and A.D.A. complaints. The EEOC issued a right to sue letter, and Bayer filed this action, alleging discrimination and retaliation in violation of the A.D.A. Neiman filed a motion to compel arbitration, which the district court denied. This interlocutory appeal followed.

II

The primary question in this case is whether Bayer's continued employment with Neiman after he received the Arbitration Agreement and Acknowledgment Form constituted implied consent to the Arbitration Agreement under California law. When a federal court confronts a state law issue without binding precedent from the state's highest court, as is the case here, the court "must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *Sec. Pac. Nat'l Bank v. Kirkland (In re Kirkland)*, 915 F.2d 1236, 1239 (9th Cir. 1990).

Under California law, a contract is established when (1) the parties are capable of contracting, (2) the parties consent to the contract, (3) the contract describes a lawful object, and (4) there was sufficient cause or consideration

supporting the contract. Cal. Civ. Code § 1550. Here, there is no dispute over the first, third, and fourth elements. The only question is whether Bayer legally consented to the Arbitration Agreement.

California's intermediate appellate courts have recognized that employees' consent may be implied from their continued employment after the unilateral imposition of an arbitration agreement by the employer. *See, e.g.*, *Craig v. Brown & Root, Inc.*, 84 Cal. App. 4th 416, 421–22 (2000). However, as the district court properly noted, California courts have not found implied consent when the employer has required the employee to sign or acknowledge an arbitration agreement. *Gorlach v. Sports Club Co.*, 209 Cal. App. 4th 1497, 1509–11 (2013); *Mitri v. Arnel Mgmt. Co.*, 157 Cal. App. 4th 1164, 1171 (2007); *Romo v. Y-3 Holdings, Inc.*, 87 Cal. App. 4th 1153, 1159–60 (2001).

In *Gorlach*, the employees were presented with a new employee handbook that contained a provision stating that, as a condition of employment, all employees must sign an arbitration agreement. The plaintiff declined to sign and continued working. 209 Cal. App. 4th at 1500. The court concluded that the continued employment did not create an implied-in-fact arbitration agreement. *Id.* at 1507–10. The court distinguished *Craig* on the basis that the employees were required to sign the agreement. *Id.* at 1508–09.

Similarly, in *Mitri*, the employee handbook contained a unilateral arbitration policy and stated that employees would be required to sign a separate arbitration agreement. 157 Cal. App. 4th at 1167. None of the affected employees signed the separate agreement; therefore, the court concluded the employees had not consented, and therefore there was no effective agreement to arbitrate. *Id.* at 1173. In *Romo*, the employee handbook contained general provisions and an arbitration provision. 87 Cal. App. 4th at 1156. The plaintiff acknowledged the general provisions but did not sign the arbitration provision. Therefore, the court concluded there was no effective arbitration agreement. *Id.* at 1159–60.

Here, as part of its mailing to the employees, Neiman required the employees to sign the Acknowledgment Form, which contained the waiver of rights and an acknowledgment that continued employment would include arbitration as a condition and term. Bayer not only refused to sign, he filed an EEOC claim contending that the requirement constituted disability discrimination. Over the course of his employment, he refused to sign four other arbitration-related documents. He explained to his supervisors that he was refusing to be bound by the Arbitration Agreement. He sent letters to Neiman explaining his refusal to be governed by the Arbitration Agreement, and he filed another administrative action before the EEOC raising the issue.

-6-

Bayer's actions stand in contrast to *Craig*, where the employee did not refuse the new arbitration terms, explicitly reject them, or state any disagreement with them. *See* 84 Cal. App. 4th at 19–20. Indeed, Bayer's actions rejecting the Arbitration Agreement were more pronounced than those involved in *Gorlach*, *Mitri*, and *Romo*, where the primary rationale was that the plaintiffs had not signed tendered documents.

Given this case law and the circumstances specific to Bayer's case, as well as appropriate drawing of all factual inferences in favor of the non-moving party, the district court reasonably concluded that California courts would not hold that Bayer's continued employment constituted implied consent to the Arbitration Agreement.[1]

III

---

[1] Our recent decisions in *Johnmohammadi v. Bloomingdale's, Inc.*, __ F.3d __, 2014 WL 2808135 (9th Cir. 2014), and *Davis v. Nordstrom, Inc.*, __ F.3d __, 2014 WL 2808139 (9th Cir. 2014), do not affect this disposition because both are factually distinguishable. In *Bloomingdale's*, Johnmohammadi received the arbitration agreement and opt-out form when she was first hired. 2014 WL 2808135, at *1. She did not opt out and did "not contest the district court's findings that she made a fully informed and voluntary decision . . . . By not opting out within the 30–day period, she became bound by the terms of the arbitration agreement." *Id.* In *Nordstrom*, Davis received the arbitration agreement as a part of the employee handbook and was thus bound by the agreement when she first took her position. 2014 WL 2808139, at *2. Nordstrom later revised the agreement, but Davis "never objected to the revised provision and she did not quit her job." *Id.* at *3.

Neiman also argues that the question of arbitrability must be decided by the arbitrator, not the court. However, the district court did not reach this question. We therefore decline to address it in this interlocutory appeal.

**AFFIRMED.**