Filed 10/29/14  Bergiadis v. Fred Loya Ins. Agency CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ALEX BERGIADIS,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>FRED LOYA INSURANCE AGENCY, INC.,<br><br>    Defendant and Appellant. | B249276<br><br>(Los Angeles County<br>Super. Ct. No. BC491770) |

_____

APPEAL from an order of the Superior Court of Los Angeles County, Kenneth R. Freeman, Judge.  Reversed.

Paul Hastings, George W. Abele, Elizabeth A. Brown, Ji Hae Kim; Grube Brown & Geidt and Elizabeth A. Brown for Defendant and Appellant.

Law Offices of Thomas W. Falvey, Thomas W. Falvey, J.D. Henderson, Michael H. Boyamian; Sottile Baltaxe, Timothy B. Sottile, Michael F. Baltaxe, Jeremy D. Scherwin, Brenda L. Valle; Law Officers of Emilio J. Huerta and Emilio J. Huerta for Plaintiff and Respondent.

_____

Alex Bergiadis, who worked for Fred Loya Insurance Company (Fred Loya) as an appraiser from January 2010 to June 2010, is one of five employee plaintiffs who filed a class action complaint against Fred Loya. The first amended complaint alleged unpaid wages; failures to pay minimum wage, pay overtime compensation, provide meal and rest periods, and furnish accurate wage and hour statements; Labor Code violations, conversion, and unfair competition; and claims under the Private Attorneys General Act, Labor Code sections 2698 et seq. (PAGA).

Fred Loya filed a motion to sever Bergiadis's claims and to compel arbitration, arguing that Bergiadis had signed a valid arbitration agreement that did not provide for class or representative actions, and was required to arbitrate his claims as an individual. A declaration by the director of human resources in Fred Loya's Texas headquarters stated: "The arbitration agreement is presented to employees as a stand-alone document, separately from the other hiring paperwork." Attached was a six-page "MUTUAL AGREEMENT TO ARBITRATE CLAIMS" (Agreement), initialed and signed on the last two pages by Bergiadis and by a company representative, and dated January 25, 2010. The Agreement bore page numbers 55–60. A further declaration by California Regional Supervisor Milton Mier stated that on or about January 25, 2010 he "provided . . . Bergiadis with various documents which make up Fred Loya's standard new hire paperwork. Included in that new hire paperwork is the Mutual Agreement to Arbitrate Claims." Mier went over the paperwork with Bergiadis page by page, including the Agreement, to make sure that he understood the documents and to answer questions.

In opposition, Bergiadis argued that the Agreement was not a stand-alone agreement but pages 55–60 of a 64-page employee manual which itself provided that it was not a contract between Fred Loya and Bergiadis, and that in any event the Agreement was unconscionable. A declaration by Bergiadis stated that on January 25, 2010, around the time that he was hired, Bergiadis was given the employee manual by Mier, who told him to read and sign it during his lunch break and return it after the break was over. Attached was a complete copy of Fred Loya's 64-page employee manual that counsel for

2

Bergiadis obtained from counsel for Fred Loya. Fred Loya replied that the Agreement was distinct from the employee manual and was not unconscionable.

After a hearing on April 29, 2013, the trial court denied the motion to sever and to compel arbitration in an order filed on May 15, 2013, concluding Fred Loya had not shown that there was an agreement to arbitrate, and in any event the Agreement was procedurally and substantively unconscionable. Fred Loya timely filed a notice of appeal.

## DISCUSSION

The trial court based its ruling entirely on the texts of the Agreement and the employee manual rather than on the resolution of conflicts in the evidence or factual inferences, and so we review de novo. (*Sanchez v. Carmax Auto Superstores California, LLC* (2014) 224 Cal.App.4th 398, 401 (*Sanchez*).)

**The Agreement is an agreement to arbitrate.**

Page 9 of the manual provides, under the title "ACKNOWLEDGMENT OF RECEIPT," that the employee has read and understood the manual. A second paragraph states: "I acknowledge that this manual is provided as an informational guide only and is not a contract or an offer of a contract between the Company and me. Similarly, no Company policy, procedure, guideline or practice is a contract or an offer of a contract between the Company and me. I understand that my relationship with that Company is that I am an at-will employee." The remainder of the paragraph describes the employee's at-will status, and ends by stating that only an "express individual written employment agreement" signed by Fred Loya's president can change that status. There is a signature line on the page for the employee, which is unsigned in the record provided to us.

The trial court concluded that a reasonable reading of that language would include the arbitration agreement on pages 55–60 as a "procedure" which was not a contract, and "[a]bsent a contract, there is no agreement to arbitrate." We disagree. Read in context, the statement on page 9 that the manual or any company practice or procedure "is not a contract" pertains to the at-will status of Bergiadis's employment with Fred Loya (as described in the rest of the paragraph), which could only change with an express,

3

individual, written contract signed by Fred Loya's president.  The language on page 9 of the manual, again read in context, provides that the manual and other company procedures do not create a contract *of employment*.

The language of the Agreement similarly states that it "is not, and shall not be construed to create, any contract of employment, express or implied.  Nor does this Agreement in any way alter the 'at-will' status of my employment."  The Agreement provides that it is the complete agreement between the parties *on the subject of arbitration*.  (See *Sanchez*, *supra*, 224 Cal.App.4th at pp. 401–402.)

The trial court also concluded that because the manual's language on page 9 included a statement that the company "reserves the right in its sole discretion with or without notice, cause or consideration, to modify, depart from or terminate any of the Company's policies [or] procedures," the Agreement was illusory.  The Agreement, however, includes a very different provision which is *not* unilateral, stating that its terms "can only be revoked or modified by a writing signed by both the Company's Chief Executive Officer and me which specifically states an intent to revoke or modify this Agreement."  *Sparks v. Vista Del Mar Child & Family Services* (2012) 207 Cal.App.4th 1511, 1515–1517 involved an employee handbook containing a brief "dispute resolution policy" requiring arbitration and providing that the handbook could be revised at any time without notice, and the employee signed only an acknowledgment of receipt of the handbook, stating in a declaration that he was not aware of the arbitration clause.  In contrast, Bergiadis signed the Agreement which provided for modification only by another signed agreement, and did not state in his declaration that he did not understand that he was signing an agreement to arbitrate his employment claims.  (See *Casas v. Carmax Auto Superstores California, LLC* (2014) 224 Cal.App.4th 1233, 1236–1237.)

The Agreement is a separate and severable agreement from the manual, containing language which "suggests it is intended as a complete stand-alone agreement" and requiring a separate signature.  (*Romo v. Y-3 Holdings, Inc.* (2001) 87 Cal.App.4th 1153, 1159.)

4

**There is a low degree of procedural unconscionability.**

"An arbitration agreement is unenforceable if it is unconscionable at the time that it was made. [Citations.] The agreement is invalid if it is both procedurally and substantively unconscionable." (*Sanchez*, *supra*, 224 Cal.App.4th at p. 402.) Bergiadis has the burden to show unconscionability. (*Ibid.*) "'[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.'" (*Ibid.*)

The trial court concluded that the Agreement was a contract of adhesion, and we agree. The Agreement was presented to Bergiadis on a take-it-or-leave-it basis (he was required to sign it for employment with Fred Loya), and it was therefore a standard adhesion contract imposed and drafted by Fred Loya, whose bargaining power was superior. (*Sanchez*, *supra*, 224 Cal.App.4th at p. 402.) Absent more indication of oppression or surprise, however, an adhesive contract has only a low degree of procedural unconscionability. (*Galen v. Redfin Corp.* (2014) 227 Cal.App.4th 1525, 1540 (*Galen*).) "'""Oppression" arises from an inequality of bargaining power which results in no real negotiation and "an absence of meaningful choice." [Citations.] "Surprise" involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms.'""" (*Tiri v. Lucky Chances, Inc.* (2014) 226 Cal.App.4th 231, 245.)

The trial court found no surprise, but found additional oppression in the Agreement's method for choosing the rules governing arbitration, and Fred Loya's failure to attach a copy of the rules. The Agreement provides that any arbitration will be held either under the auspices of the American Arbitration Association (AAA) or Judicial Arbitration & Mediation Services (JAMS), "with the designation of the sponsoring organization to be made by the party who did not initiate the claim," and "except as provided in this Agreement, the arbitration shall be in accordance with the sponsoring organization's *then-current* employment arbitration rules/procedures." (Italics added.) The trial court construed the agreement to give Fred Loya the unilateral right to select the

5

arbitration rules because the employee would be most likely to initiate arbitration, and also concluded that the failure to attach the rules was oppressive.

"The failure to attach a copy of arbitration rules could be a factor supporting a finding of procedural unconscionability where the failure would result in surprise to the party opposing arbitration." (*Lane v. Francis Capital Management LLC* (2014) 224 Cal.App.4th 676, 690 (*Lane*).) Although the trial court labeled the failure to attach the rules oppression, rather than surprise, we are not bound by its categorization. (*Imburgia v. DIRECTTV, Inc.* (2014) 225 Cal.App.4th 338, 342.) We consider whether the Agreement's rules provision constituted surprise, in that failing to attach the rules themselves concealed the terms of the agreement to arbitrate.

In *Lane*, *supra*, 224 Cal.App.4th 676, Division 4 of the Second Appellate District concluded that the failure to attach a copy of the AAA rules did not render an arbitration agreement procedurally unconscionable, as the AAA rules were easily accessible on the internet, the plaintiff had the means and capacity to access the rules, and the arbitration agreement (which, as here, provided that the "'then current'" rules applied) "clearly specified a particular set of AAA rules, and it did not modify those rules in any manner." (*Id.* at pp. 681, 690, 692.) In *Peng v. First Republic Bank* (2013) 219 Cal.App.4th 1462, 1472, the First Appellate District concluded that the failure to attach the AAA rules was insufficient to find an adhesive arbitration agreement procedurally unconscionable, where the plaintiff did not identify any features of the rules "that prevent fair and full arbitration." In *Galen*, *supra*, 227 Cal.App.4th at pp. 1531, 1540–1541, the same court found that the failure to attach AAA rules to an adhesive arbitration agreement providing for the use of the AAA rules "'then in effect'" was not unconscionable, again because there was no showing that the rules contained provisions limiting the scope of the plaintiff's claims or the available relief.

We conclude, however, that the Agreement's reference to the "then-current" AAA or JAMS rules clearly means the rules in effect at the time a claim is made. Even assuming the rules of both JAMS and AAA are available on the internet and were easily accessible to Bergiadis, it was not possible for him (at the time of signing) to access the

6

rules that will be in effect at some time in the future when a claim is made. It is also true, however, that had Fred Loya attached the AAA or JAMS rules when it presented Bergiadis with the Agreement for his signature, Bergiadis still would not have possessed the rules that would govern a future claim, given the Agreement's provision for the use of the "then-current" rules. The rules provision therefore presents some degree of surprise *even if the rules had been attached*, which adds to the degree of procedural unconscionability.

Nevertheless, Bergiadis does not identify any material change in the AAA or JAMS rules between the time that he signed the agreement and the time he made a claim (this lawsuit). Further, the Agreement specifies that the AAA or JAMS rules apply "except as provided in this Agreement." The Agreement provides rules for the location of the arbitration (in or near the city where Bergiadis is last employed by Fred Loya); the selection of the arbitrator; the choice of law as "the state in which the claim arose" or federal law; the arbitrator's ability to rule on prehearing disputes and motions; the filing of posthearing briefs; a written opinion including the factual and legal basis of the award; the timing of the award; the filing of a motion to reconsider; the payment of the arbitrator fees and costs, mostly by Fred Loya (except for the parties' own costs and attorney fees); and the arbitrator's award of attorney's fees and costs to the prevailing party in a statutory claim affording fees and costs. The Agreement also provides rules for discovery (the adequacy of which we address below), as well as time limits for commencing arbitration and required notice. These specific provisions in the Agreement "trump[] the otherwise applicable AAA and JAMS rules." (*Ontiveros v. DHL Express (USA), Inc.* (2008) 164 Cal.App.4th 494, 511.) These key provisions, which can be altered only by subsequent written agreement signed by the parties, minimize the amount of unfair surprise that Bergiadis would suffer from "then-current" AAA or JAMS rules.

Regarding the Agreement's provision that the designation of the sponsoring organization is to be made by the party who did not initiate the claim, the trial court stated in a footnote: "Loya claims that this provision does not give Loya the right to select the arbitrator; that right goes only [to] the party *not* initiating the arbitration.

7

However, for all intents and purposes, Loya likely would not be the party that initiates arbitration against its employees (and instead, the employee likely would be the party initiating arbitration)." First, the provision in question does not govern the selection of the arbitrator, but rather whether AAA or JAMS will be the sponsoring organization. Although Bergiadis refers to this as "the one-sided arbitrator selection clause whereby Loya always selects the arbitrator," an entirely different clause governs the parties' selection of the individual arbitrator, and Bergiadis did not argue that clause was unconscionable in the trial court, and therefore has waived any challenge to it. (*Gutierrez v. Autowest, Inc.* (2003) 114 Cal.App.4th 77, 93.) Second, the provision that the party not initiating arbitration makes the selection of AAA or JAMS is neutral on its face, and the trial court wrote "both AAA and JAMS are well-known for conducting arbitration proceedings in a neutral manner." Bergiadis offers no legal authority or statistical evidence to support his contention that this clause will always favor Fred Loya, and the contention is therefore without merit.

We conclude that the adhesive nature of the agreement, and Bergiadis's inability to access the version of the FAA or JAMS rules that would govern any future arbitration, demonstrate a low degree of procedural unconscionability.

### There is no substantive unconscionability.

"[S]ubstantive unconscionability turns on overly harsh or one-sided results." (*Sanchez*, *supra*, 224 Cal.App.4th at p. 402.) When, as here, there is a low degree of procedural unconscionability, a high degree of substantive unconscionability is required to determine that the arbitration agreement may not be enforced. (*Galen*, *supra*, 227 Cal.App.4th at p. 1539.)

### Discovery provision

The trial court concluded that the provision for discovery was evidence of substantive unconscionability. The discovery provision states: each party may take three individual depositions and depose the other party's experts, "except as may be ordered by the arbitrator for good cause shown"; each party may make requests for production, and may subpoena documents from third parties; and requests for additional discovery may

8

be made to the selected arbitrator, who may grant the request "if the Arbitrator finds that the party requires it to adequately arbitrate a claim, taking into account the parties' mutual desire to have a fast, cost-effective dispute resolution mechanism." The court found this unconscionable because it was "quite conceivable" Bergiadis might need to take more than three depositions, and it would be "unfair" to require him to show good cause; it was unclear how many requests for production may be made; and there was no provision allowing interrogatories or requests for admission.

An arbitration agreement need not permit "'"unfettered discovery,"'" and the parties may agree to something less than the discovery provided in a civil action so as to achieve arbitration's purpose as a "'streamlined procedure.'" (*Sanchez*, *supra*, 224 Cal.App.4th at p. 404.) In *Sanchez*, the plaintiff challenged an arbitration agreement which provided for disclosure of relevant documents and production of the personnel file upon request with each party under a continuing obligation to supplement, limited the parties to 20 interrogatories and three depositions, and stated that the arbitrator may allow additional discovery on a showing of "'substantial need,'" if the additional discovery is not unduly burdensome and if it would not unduly delay conclusion of the arbitration. The plaintiff argued "a plaintiff has a greater need for discovery and so the limitation, even if it applies to both him and [the employer], is unfair." (*Ibid.*) We noted that the plaintiff did not show how the discovery provision would prevent him from vindicating his rights, and the arbitration agreement also provided that the arbitrator may allow additional discovery on a showing of "substantial need," rather than the "compelling need" standard found too stringent in *Fitz v. NCR Corp.* (2004) 118 Cal.App.4th 702, 720 (*Fitz*). (*Sanchez*, *supra*, 224 Cal.App.4th at pp. 404–405.) We concluded that "[w]ithout some showing that Sanchez would be unable to vindicate his rights, we could not conclude that [the] discovery provisions are unconscionable as a matter of law." (*Id.* at pp. 405–406.) In *Lane*, *supra*, 224 Cal.App.4th at p. 692, an arbitration agreement with no express discovery provision incorporated the AAA rule that the arbitrator had the authority to order discovery he or she "'"considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration."'" The court

9

of appeal found this sufficient to vindicate the plaintiff's statutory rights under *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83. (*Lane*, at p. 693.)

The discovery provision provides for specified discovery without any showing, and allows the arbitrator to permit any additional discovery for which the requesting party can show "good cause" (for depositions) or where the arbitrator determines more discovery (presumably including interrogatories) is "require[d] . . . to adequately arbitrate a claim." "[G]ood cause" is a more lenient standard, and "require[d]" is no more stringent, than "substantial need" or "necessary." As Bergiadis has made no showing he would be unable to vindicate his rights, we conclude the discovery provision is not unconscionable.

### Costs provision

The trial court found further unconscionability in the fees and costs provision. That provision first states that Fred Loya will pay filing fees and costs of an arbitrator, with the employee (if he initiates the claim) contributing an amount equal to a filing fee in state court (the court found this unobjectionable). The court found the remainder of the costs provision unconscionable: "Each party shall pay for its own costs and attorney's fees if any. However, if any party prevails on a statutory claim which affords the attorneys' fees and/or costs, the Arbitrator may award reasonable attorneys' fees and /or costs to the prevailing party, applying the same standards a court would apply under the law applicable to the claim(s)." Because California Code of Civil Procedure section 1032, subdivision (b) provides "[e]xcept that otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding," the trial court found it unconscionable that the agreement provided for the prevailing party's recovery of costs only in statutory claims.

The costs provision is not unilateral, affecting both parties equally should they prevail in arbitration. That it does not expressly provide that the parties can recover costs in any arbitration in which either prevails on a nonstatutory claim is not a sign of unconscionability. The Agreement also provides that the arbitrator is to apply the

10

substantive law and the law of remedies of the state in which the claim arose.  That provision requires the arbitrator to follow applicable law, including Code of Civil Procedure section 1032, subdivision (b)'s statutory requirement of an award of costs to the prevailing party.  "[T]here is no requirement in the law, and plaintiff cites none, that requires such a provision in order to make an arbitration agreement valid.  The absence of a provision in the arbitration agreement guaranteeing a prevailing plaintiff's ability to recover attorney's fees and costs does not render the arbitration agreement substantively unconscionable, and therefore it does not render the agreement invalid."  (*Abreu v. Slide, Inc.* (C.D. Cal. July 12, 2012, C 12-00412) 2012 U.S.Dist. Lexis 96932, at pp *15–16.)

### Equitable relief

The Agreement provides:  "Claims for workers' compensation or unemployment compensation benefits are not covered by this Agreement.  [¶]  Also not covered are claims by the Company or by me for temporary restraining orders or preliminary injunctions ('temporary equitable relief') in cases in which such temporary equitable relief would be otherwise authorized by law.  Such resort to temporary equitable relief shall be pending and in aid of arbitration only in such cases the trial on the merits of the action will occur in front of, and will be decided by, the Arbitrator, who will have the same ability to order legal or equitable remedies as could a court of general jurisdiction."  The court concluded the provision showed "a lack of mutual remedies" because "while ostensibly both sides could seek temporary restraining orders or preliminary injunctions [in court], in practice, it is likely that only Defendant Loya would seek a TRO or a preliminary injunction.  This provision, coupled with the fact that all wage claims must be brought in arbitration (claims which are likely to be brought by the employee against Defendant Loya, rather than by Defendant Loya against the employee) is further evidence of substantive unconscionability."

The court acknowledged that the language of the Agreement was mutual, and we agree, as it exempts from arbitration temporary restraining orders or preliminary injunctions in all arbitrable cases, allowing both Fred Loya and Bergiadis to go to court to seek either form of temporary equitable relief.  "The injunctive remedy exception allows

11

'a party' to go to court for 'injunctive or other provisional relief.' It does not provide 'a choice of forums [solely] for the claims of the stronger party.'" (*Chin v. Advanced Fresh Concepts Franchise Corp.* (2011) 194 Cal.App.4th 704, 712.) The court concluded, however, that only Fred Loya was likely to use the exception. This is unsupported by the Agreement or anything in the record. The cases cited by the trial court involved arbitration agreements containing provisions which specifically exempted from arbitration claims which the employer would typically bring, such as intellectual property violations, unfair competition, unauthorized disclosure of trade secrets, and breach of confidentiality. (See *Mercuro v. Superior Court* (2002) 96 Cal.App.4th 167, 175–176; *Abramson v. Juniper Networks, Inc.* (2004) 115 Cal.App.4th 638, 665; *Martinez v. Master Protection Corp.* (2004) 118 Cal.App.4th 107, 115.) Those cases noted that the exclusion from arbitration of claims typically brought by the employee, such as claims for workers' compensation and unemployment benefits, did not redress the imbalance because "[w]orkers' compensation and unemployment benefits are governed by their own adjudicatory systems; neither is a proper subject matter for arbitration." (*Mercuro*, at p. 176; see *Abramson*, at pp. 665–666; *Martinez*, at p. 115.) There is no similar imbalance here to redress, as the Agreement does not exempt from arbitration any claims for injunctive relief that would typically be brought by Fred Loya.

In *Trivedi v. Curexo Technology Corp.* (2010) 189 Cal.App.4th 387 (*Trivedi*), the First Appellate District construed an employment agreement containing an arbitration clause, in which the employee agreed to resolve "'[a]ny dispute arising out of or relating to this Agreement or any act which would violate any provision of this Agreement" through arbitration. (*Id.* at p. 390.) The one-paragraph agreement also provided: "'provisional injunctive relief may, but need not, be sought in a court of law while arbitration proceedings are pending, and any provisional injunctive relief granted by such court shall remain effective until the matter is finally determined by the Arbitrator.'" (*Id.* at p. 392.) The Court of Appeal concluded that the injunctive relief provision was substantively unconscionable because "allowing the parties access to the courts only for injunctive relief favors Curexo, because it is 'more likely that [Curexo], as the employer,

12

would seek injunctive relief,'" which "is not a novel or unsupportable proposition." (*Id.* at p. 397, citing *Mercuro v. Superior Court*, *supra*, 96 Cal.App.4th at p. 176 & *Fitz*, *supra*, 118 Cal.App.4th 702.) *Fitz* involved an arbitration policy covering "'most workplace concerns,'" including a list of covered claims that "while not an inclusive list, only includes the types of complaints that are predominately, if not solely, of concern to employees" and excepting from arbitration trade secret, noncompetition, and intellectual property disputes. (*Fitz*, at p. 725 & fn. 6.) The Court of Appeal found the arbitration policy unconscionable, because the arbitration policy "compels arbitration of the claims more likely to be brought by Fitz, the weaker party, and exempts from arbitration the types of claims that are more likely to be brought by NCR, the stronger party." (*Id.* at p. 725.) As we explained above, in this case the Agreement does not limit the arbitrable claims to those regarding employment, stating instead that Bergiadis and Fred Loya consent to arbitrate "all claims or controversies . . . whether or not arising . . . out of my employment (or its termination)," nor does the Agreement except any claims only the employer might bring.[1]

We find no substantive unconscionability. As both procedural and substantive unconscionability must be present to invalidate the Agreement, we conclude the Agreement is enforceable.

**The arbitrator should determine whether the Agreement allows class arbitration.**

The trial court did not address the issue of class arbitration, finding it moot because the court concluded there was no agreement to arbitrate, and in any event the agreement was unconscionable. On this appeal, Fred Loya urges us to find in the first

---

[1] The California Supreme Court has granted review in two cases that expressly declined to follow the reasoning in *Trivedi*, *supra*, 189 Cal.App.4th 387: *Baltazar v. Forever 21, Inc.* (2012) 212 Cal.Rptr.4th 221 [154 Cal.Rptr.3d 73], review granted March 20, 2013, S208345; and *Leos v. Darden Restaurants* (2013) 217 Cal.App.4th 473 [161 Cal.Rptr.3d 699], review granted September 22, 2013, S212511.

13

instance that the Agreement does not provide for class arbitration, and therefore to find that Bergiadis should be compelled to arbitration on an individual basis.

The Agreement provides that its interpretation and enforcement are governed by the Federal Arbitration Act (FAA). Under the FAA, "[c]lass arbitration is a matter of consent: An arbitrator may employ class procedures only if the parties have authorized them." (*Oxford Health Plans LLC v. Sutter* (2013) 569 U.S ___ [133 S.Ct. 2064, 2066, 186 L.Ed.2d 113, 117]; see *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.* (2010) 559 U.S. 662, 684 [130 S.Ct. 1758, 176 L.Ed.2d 605].) In both *Oxford* and *Stolt-Nielsen*, the Supreme Court reviewed decisions by arbitrators construing the parties' arbitration agreements (which were silent on this issue) to determine whether the parties agreed to class arbitration. (*Oxford*, at p. ___ [133 S.Ct at p. 2067]; *Stolt-Nielsen*, *supra*, 559 U.S. at p. 672.) The United States Supreme Court "has not yet decided whether the availability of class arbitration is a question of arbitrability." (*Oxford*, at p. ___ [133 S.Ct at p. 2068, fn. 2].) In *Sandquist v. Lebo Automotive, Inc.* (2014) 228 Cal.App.4th 65, 71 (*Sandquist*), the trial court granted a motion to compel individual arbitration and dismissed class claims, concluding there was no contractual basis to compel class arbitration. Division Seven of the Second Appellate District held: "[W]hether the parties agreed to class arbitration was for the arbitrator rather than the court to decide, and . . . the trial court erred by deciding that issue in this case." (*Id.* at p. 79.) The court left for the arbitrator "the merits of whether the arbitration provisions Sandquist signed permit class arbitration." (*Ibid.*)

We decline the invitation to construe the Agreement to determine whether it authorizes class arbitration. First, because the trial court concluded the Agreement was illusory and unconscionable, it found it unnecessary to decide this issue of contract interpretation. The finder of fact should determine in the first instance whether the parties agreed to arbitrate class claims, considering any extrinsic evidence of the parties' intent. (See *Sandquist*, *supra*, 228 Cal.App.4th at p. 79.) Second, we agree with the careful analysis in *Sandquist* that this question is one for the arbitrator, consistent with the plurality opinion of the United States Supreme Court in *Green Tree Fin. Corp. v.*

14

*Bazzle* (2003) 539 U.S. 444, 451–452 [123 S.Ct. 2402, 156 L.Ed.2d 414]. (*Sandquist*, *supra*, 228 Cal.App.4th at pp. 75–79.)

**The PAGA claims may be subject to arbitration.**

Fred Loya argues that the Agreement does not allow arbitration of representative claims under PAGA, an issue not reached by the trial court. After briefing was complete, the California Supreme Court held that an employee's arbitration agreement may not expressly waive representative claims under PAGA, and that such a claim is not preempted by the FAA. (*Iskanian v. CLS Transportation Los Angeles LLC* (2014) 59 Cal.4th 348, 384, 388–389 (*Iskanian*).) As an express waiver is prohibited, an implied waiver of PAGA claims cannot be read into the Agreement.

As in *Iskanian*, *supra*, 59 Cal.4th 348, questions remain that the parties have not addressed: "(1) Will the parties agree on a single forum for resolving the PAGA claim and the other claims? (2) If not, is it appropriate to bifurcate the claims, with individual claims going to arbitration and the representative PAGA claim to litigation? (3) If such bifurcation occurs, should the arbitration be stayed pursuant to Code of Civil Procedure section 1281.2?" (*Id*. at pp. 391–392.) The parties may address those questions on remand. (*Id*. at p. 392.)

15

## DISPOSITION

The order denying Fred Loya Insurance Agency's motion to compel arbitration is reversed. On remand, the parties shall decide whether to agree on a single forum for all claims; if not, whether to bifurcate the claims, sending individual claims to arbitration and the representative Private Attorneys General Act claims to litigation; and if bifurcation occurs, whether to stay the arbitration pursuant to Code of Civil Procedure section 1281.2. Fred Loya Insurance Agency is awarded costs on appeal.

NOT TO BE PUBLISHED.

JOHNSON, J.

We concur:

CHANEY, Acting P. J.

MILLER, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.