Filed 12/23/14  American Internat. Group v. Super. Ct. Ca2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| AMERICAN INTERNATIONAL GROUP, INC., et al., <br><br> Petitioners, <br><br> v. <br><br> THE SUPERIOR COURT OF LOS ANGELES COUNTY, <br><br> Respondent; <br><br> AIR LEASE CORPORATION et al., <br><br> Real Parties in Interest. | B258943 <br><br> (L.A.S.C. No. BC483370) <br><br><br> OPINION AND ORDER GRANTING PEREMPTORY WRIT OF MANDATE |

ORIGINAL PROCEEDING; petition for writ of mandate.  Jane L. Johnson, Judge.  Petition granted.

Morrison & Foerster, Arturo J. Gonzalez, Eric A. Tate and Tritia M. Murata for Petitioners American International Group, Inc., and International Lease Finance Corporation.

No appearance for Respondent.

Munger, Tolles & Olson, Mark B. Helm, Carolyn H. Luedtke, Laura D. Smolowe and Amelia L.B. Sargent for Real Party in Interest Air Lease Corporation.

Scheper Kim & Harris, Alexander H. Cote and Katherine Farkas for Real Party in Interest John Plueger.

It is well established that where a company employee uses the company computer system to send and receive electronic communications (emails), those emails are not protected from disclosure to the company that owns the computer system, particularly when the employee acknowledged in writing that the employee had no right to privacy when using the computer system. The result is no different for a company executive.

In the case at bar, John Plueger, a former executive of American International Group, Inc., and International Lease Finance Corporation (collectively ILFC), executed an acknowledgement in writing that he had no right to privacy to the emails sent and received on ILFC computer system during his ILFC tenure. Because the emails were not private, they were not confidential and, thus, not subject to the protection of the attorney-client privilege.

Accordingly, we hold that ILFC is not obligated to "return, destroy, and otherwise make no use of emails" and reverse the challenged order.

## BACKGROUND

ILFC sued Air Lease Corporation (ALC), Plueger, and others, for, inter alia, breach of fiduciary duty and misappropriation of trade secrets.[1] In the fifth amended complaint, ILFC alleges that Plueger was its chief operating officer (COO), but resigned and then became president and COO of a competing entity, defendant ALC.

ILFC has access to the emails that Plueger sent and received on ILFC computers during the period of time that he was in ILFC's employ. ALC and Plueger moved for an order compelling ILFC "to return, destroy, and otherwise make no use of any and all content of communications between Plueger and his attorneys that may be contained in any servers, computers, or other hard-copy or electronic media in their possession. [¶] This motion is made on the grounds that Plueger's communications with his counsel were privileged . . . ."

---

[1] Both are in the business of airplane leases and come under limited federal scrutiny.

Nearly two decades ago, on November 5, 1997, Plueger signed the Employee Acknowledgement, which provides in part: "I understand that my computer at ILFC and the software and files on my computer are ILFC property. I have no right to privacy with respect to any information on my computer or when using ILFC's E-mail or voicemail systems. ILFC and its Network Administrator have the right without my permission to delete any unauthorized software on my computer."

The Employee Acknowledgement begins: "This Personnel Policy Manual is an important document intended to help you become acquainted with ILFC. This Manual will serve as a guide; it is not the final word in all cases. Individual circumstances may call for individual attention."

The manual provides in part:

"Personal Use of ILFC E-Mail System and Internet Access

"The e-mail system and internet access provided by ILFC are for conducting company business. ILFC recognizes that some personal business and communications occur today by e-mail or over the internet instead of telephone calls. Thus, as in the case with personal telephone calls, a certain level of personal e-mails will be sent and received at work. Similarly, some personal use of ILFC's internet services may be necessary or convenient. However, use of ILFC's e-mail and internet access services should be kept to a minimum and must not interfere with your work. To the extent possible, they should be made during the lunch hour, break periods or after hours.

"[¶] . . . [¶]

"Monitoring of E-Mails and Internet Use for Non-Company Use and Pornographic or Inappropriate Content

"An employee has no right to or expectation of privacy in his/her use of company computer systems or equipment. ILFC has the right to monitor, access, review, copy, delete, disclose and block an employee's e-mails, even those marked private, and monitor, disclose and block an employee's internet use without notice to or consent of the employee."

3

In his declaration in support of the motion, Plueger stated that he worked at ILFC for 24 years. In October 2008, Plueger and "other members of the ILFC management team" hired counsel, the law firm of Munger, Tolles & Olson LLP (MTO), for advice connected to the anticipated sale of ILFC by its parent. ILFC paid MTO "for all of the ILFC-related work MTO did on [Plueger's] behalf." From October 2008 through March 26, 2010, Plueger used ILFC equipment, as well as his personal computer, to communicate with MTO. Plueger quoted from the emails which contained an advising footer, stating that the email was confidential, protected by attorney-client privilege or the attorney work product doctrine and instructing the recipient to delete the email. Plueger further stated in his declaration that ILFC "fully authorized and endorsed" his use of MTO as counsel and paid MTO on his behalf.

Plueger stated that, as COO, he knew that ILFC did not monitor personal emails, except for two situations that did not apply to him: emails containing offensive language and emails from persons or companies forbidden to do business with U.S. companies. Based on his understanding of this practice, and the proviso in the Personnel Policy Manual that expressly states that the restriction on personal use of the ILFC computers is "'a guide'" and "'individual circumstances'" provided exceptions, Plueger believed that the emails sent to/from counsel were protected by the attorney-client privilege.

On the day he resigned, Plueger stated that an IT employee of ILFC created a hard drive of Plueger's personal files and gave the hard drive to Plueger. Plueger turned the hard drive over to his counsel, who identified 56 emails as protected by the attorney-client privilege.

On June 20, 2014, respondent court granted the motion. Respondent concluded that, while Plueger was bound by the policy, the policy, itself, "allows for exceptions based on circumstances." These circumstances include the employee manual's allowance of "a certain level of personal e-mails." Additionally, respondent court found that ILFC had hired and paid MTO to advise Plueger; the hiring and paying of the law firm constituted a basis for Plueger to have a reasonable belief that his "individual

4

circumstances" exempted him from the general rule that e-mails between him and his counsel were not private.

The order was served electronically on the same day. ILFC did not seek appellate review of the order at that time. A formal order was filed on August 22.[2]

ILFC filed its sixth amended complaint on September 11.

## DISCUSSION

ILFC contends that Plueger's communications with MTO are not protected by the attorney-client privilege (Evid. Code, § 952), because Plueger had acknowledged in writing that he had no right to privacy in any communications made on ILFC equipment and that the trial court erred in concluding that "individual circumstances" gave Plueger license to ignore ILFC's clear technology-use policy.[3]

---

[2] We reject the contention of ALC and Plueger that we should forgo the granting of relief because of the timing of the filing of the writ petition. We note that ALC and Plueger acknowledge that respondent court filed a formal order on August 22, 2014. The petition, filed September 19, 2014, was filed just under one month after the filing of the formal order.

[3] Evidence Code section 952 provides: "As used in this article, 'confidential communication between client and lawyer' means information transmitted between a client and his or her lawyer in the course of that relationship and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other than those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted, and includes a legal opinion formed and the advice given by the lawyer in the course of that relationship."

Evidence Code section 954 provides in relevant part: "Subject to Section 912 and except as otherwise provided in this article, the client, whether or not a party, has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer . . . ."

Evidence Code section 917 states in relevant part: "(a) If a privilege is claimed on the ground that the matter sought to be disclosed is a communication made in confidence in the course of the lawyer-client . . . relationship, the communication is presumed to have been made in confidence and the opponent of the claim of privilege has the burden of proof to establish that the communication was not confidential. [¶] (b) A

5

ALC and Plueger counter that substantial evidence supports the findings of respondent court that ILFC policy allowed for individual circumstances where, in the case at bar, Plueger knew "for a fact" that ILFC was not reviewing the content of his emails, ILFC allowed for limited personal use of its computer equipment, and ILFC authorized and paid for Plueger's consultation with counsel. To the contrary, we are not bound by respondent court's interpretation of the employee handbook and Employee Acknowledgement, but review those written instruments de novo. (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865; *Romo v. Y-3 Holdings, Inc.* (2001) 87 Cal.App.4th 1153, 1158.)

It is the burden of ALC and Plueger, as the parties claiming privilege, to establish that the emails were sent in confidence. (*Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 733.) They did not carry this burden.

We agree with ILFC that Plueger had no reasonable expectation that the emails sent or received on ILFC equipment were confidential; accordingly, the subject electronic communications are not protected by the attorney-client privilege.[4] ILFC need not return, destroy, or otherwise refrain from using the emails.

---

communication . . . does not lose its privileged character for the sole reason that it is communicated by electronic means or because persons involved in the delivery, facilitation, or storage of electronic communication may have access to the content of the communication. . . ."

Evidence Code section 912, subdivision (a) provides that the holder of the privilege waives the privilege where the "holder of the privilege, without coercion, has disclosed a significant part of the communication or has consented to disclosure made by anyone. Consent to disclosure is manifested by any statement or other conduct of the holder of the privilege indicating consent to the disclosure, including failure to claim the privilege in any proceeding in which the holder has the legal standing and opportunity to claim the privilege."

[4]    In *Doe v. City & County of San Francisco* (N.D. Cal. 2011) 835 F. Supp. 2d 762, 769, the district court held that there was no violation of Federal Stored Communications Act (18 U.S.C. § 2702) in review of employee emails.

Appellate review of discovery orders is appropriate where, as here, the order prevents a party from a fair litigation of the case. (*OXY Resources California LLC v. Superior Court* (2004) 115 Cal.App.4th 874, 886.)

In 2002, we held in *TBG Ins. Services Corp. v. Superior Court* (2002) 96 Cal.App.4th 443, 445, that the advance notice of employer TBG Insurance Services Corporation (TBG) to a senior executive, Robert Zieminski, combined with Zieminski's written consent to the policy, defeated the claim that Zieminski had a reasonable expectation of privacy in the TBG-provided computer he used at home. Zieminski, who had worked as a TBG senior executive for about 12 years, signed TBG's electronic and telephone equipment policy statement and agreed in writing that TBG had the right to monitor both of his computers. After TBG terminated Zieminski's employment for misuse of his office computer, Zieminski sued TBG for wrongful termination. The trial court denied TBG's motion to compel production of the home computer. TBG filed a petition for review in our Court. We concluded "that, given the employee's consent to his employer's monitoring of both computers, the employee had no reasonable expectation of privacy when he used the home computer for personal matters." (*Ibid.*)

Zieminski did not assert that the home computer contained privileged information. That question was addressed by the Third District in *Holmes v. Petrovich Development Co., LLC* (2011) 191 Cal.App.4th 1047 (*Holmes*). In *Holmes*, the Third District held that employee Gina Holmes's communications with her lawyer on her employer's computer equipment were not protected from disclosure by the attorney-client privilege. (*Id.* at p. 1051.) The Third District emphasized that the computer "belong[ed] to the [company]," that the company had a policy against using its computers for personal reasons, and that the employee was "aware of and agree[d] to these condition," going on to explain: "Holmes used her employer's company e-mail account after being warned that it was to be used only for company business, that e-mails were not private, and that the company would randomly and periodically monitor its technology resources to ensure compliance with the policy." (*Id.* at pp. 1068–1069.)

7

In *Holmes,* the Third District explained that the attorney-client privilege did not apply, because "Holmes used a computer of defendant company to send the e-mails even though (1) she had been told of the company's policy that its computers were to be used only for company business and that employees were prohibited from using them to send or receive personal e-mail, (2) she had been warned that the company would monitor its computers for compliance with this company policy and thus might 'inspect all files and messages . . . at any time,' and (3) she had been explicitly advised that employees using company computers to create or maintain personal information or messages 'have no right of privacy with respect to that information or message.'. . . . [¶] [T]he e-mails sent via company computer under the circumstances of this case were akin to consulting her lawyer in her employer's conference room, in a loud voice, with the door open, so that any reasonable person would expect that their discussion of her complaints about her employer would be overheard by him." (*Holmes*, *supra*, 191 Cal.App.4th at p. 1051.)

Although ILFC did not regularly monitor electronic communications and may never have actually opened or reviewed any emails, ILFC had expressly warned in the Employee Acknowledgement that all files belong to ILFC and that there was "no right to privacy" in any information on the computer or in the emails. Plueger had signed the Employee Acknowledgement and does not deny that he knew what he was signing. ILFC's Personnel Policy Manual states that ILFC "has the right to monitor, access, review, copy, delete, disclose and block an employee's e-mails, *even those marked private.*" (Italics added.)

That the emails sent between Plueger and MTO were marked as privileged does not override the express provisions that Plueger acknowledged in writing that he would have no privacy interest in them.

In issuing the order, respondent court cited language in the Personnel Policy Manual stating that it is a "guide" and "not the final word in all cases. Individual circumstances may call for individual attention." The manual recognizes that "a certain level of personal e-mails will be sent and received at work." The manual shows that

8

ILFC intended a flexible application of the personnel policy, but it does not contradict the express statements that the computer system belongs to ILFC, which expressly warns its computer users that it can "monitor, access, review, copy, delete, disclose and block an employee's e-mails. . . ." ILFC cautioned that "use of ILFC's e-mail and internet access services should be kept to a minimum," and certainly did not give Plueger carte blanche to use ILFC's computer system.

It was not reasonable for Plueger to believe that his communications with counsel on ILFC computers were private; thus, by using the computer system that ILFC was free to monitor, Plueger's communications were not private nor confidential.

That ILFC hired and paid for MTO to represent Plueger individually in 2008-2010 does not support his claim of confidentiality. Plueger asserts that ILFC's hiring and paying the law firm constituted approval of Plueger's communications with the firm and its permission to use ILFC's computer, thus ILFC implicitly acknowledged that the attorney-client privilege protected the communications. To the contrary, given that Plueger stated in his declaration that in October 2008, Plueger and "other members of the ILFC management team" hired MTO and that MTO *continues* to represent ILFC, Plueger was aware that MTO served two masters. At the time he communicated with the firm, Plueger—as COO and as part of the management team that hired MTO to represent ILFC—knew that MTO was ILFC's law firm and, thus, Plueger was aware that the firm had dual loyalties to both Plueger and ILFC. Any expectation of confidentiality of communications between the firm and Plueger would have been unreasonable.

For the aforementioned reasons, Plueger's email communications via the ILFC computer system are not confidential and, thus, are not protected from disclosure by the attorney-client privilege.

Accordingly, as there is not a plain, speedy and adequate remedy at law, and in view of the fact that the issuance of an alternative writ would add nothing to the presentation already made, we deem this to be a proper case for the issuance of a peremptory writ of mandate "in the first instance." (Code Civ. Proc., § 1088; *Brown,*

9

*Winfield & Canzoneri, Inc. v. Superior Court* (2010) 47 Cal.4th 1233, 1237–1238; *Lewis v. Superior Court* (1999) 19 Cal.4th 1232, 1240–1241.) Opposition was requested and the parties were notified of the court's intention to issue a peremptory writ. (*Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 180.)

## DISPOSITION

THEREFORE, let a peremptory writ issue, commanding respondent superior court to vacate its August 22, 2014 order, granting the motion for return, destruction and nonuse of John Plueger's email communications stored on International Lease Finance Corporation's computer hard drives, and to issue a new and different order denying same, in Los Angeles Superior Court case No. BC483370, entitled American International Group, Inc., et al. v. Air Lease Corporation et al.

All parties shall bear their own costs.

NOT TO BE PUBLISHED.


THE COURT:



_____  _____  _____
    ROTHSCHILD, P. J.          CHANEY, J.          JOHNSON, J.